[Cite as *State ex rel. Ford Motor Co. v. Indus. Comm.*, 98 Ohio St.3d 20, 2002-Ohio-7038.]

THE STATE EX REL. FORD MOTOR COMPANY, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Ford Motor Co. v. Indus. Comm.*, 98 Ohio St.3d 20, 2002-Ohio-7038.]

*Workers' compensation — Determination of whether claimant's activities for his own lawn care company constitute work thus precluding him from receiving temporary total disability compensation from his primary employer — Claimant's activities consisted of signing four workers' checks and fueling and driving riding lawnmower onto a truck — Benefits not terminated when activities are truly minimal and only indirectly related to generating income.*

(No. 2002-0087 — Submitted November 13, 2002 — Decided December 20, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-813.

_____

**Per Curiam.**

{¶1}　In 1998, appellee-claimant, Christopher D. Posey, held two jobs concurrently:　one was with appellant, Ford Motor Company, and the other was his own lawn care business—Nature's Creations Landscaping.　From 1994 through 1996, claimant was the sole employee of his business.　In 1997, he hired another employee.

{¶2}　In 1998, claimant injured his neck while working for Ford. Claimant's injury forced him to stop his physical participation in his lawn care business, so he hired three more employees.　The injury also temporarily forced claimant from his job at Ford, and he received temporary total disability compensation ("TTC") from June 24, 1998, through September 8, 1998.

**{¶3}** Ford later sought to recoup that TTC, alleging that claimant's participation in his business constituted work and therefore prohibited TTC. Evidence presented regarding claimant's participation in his business, however, established only that claimant signed his four workers' paychecks and fueled and drove riding lawnmowers onto a truck. Surveillance of claimant by Ford supported claimant's contention that he did no landscaping work in connection with this business while receiving TTC.

**{¶4}** Appellee Industrial Commission of Ohio refused Ford's request to declare TTC to have been overpaid:

**{¶5}** "The claimant admits to owning a landscaping business during the period in question but denied working at the business while collecting temporary total compensation. The claimant contends that he hired help to do the work after he became disabled and that he withdrew from nearly all business activities.

**{¶6}** "The claimant states that he engaged in the following business activities: approximately once a week he put gas in lawn mowers, signed checks and issued cash for the employees['] wages; on one occassion [sic] he pushed his self propelled mower into the garage and he continued to store the landscaping equipment at his residence just as he had done before he became disabled.

**{¶7}** "Prior to becoming temporarily and totally disabled, the claimant performed nearly all of the general labor for his business. He cut grass and maintained lawns for approximately thirty-five to forty customers. Occasionally he cut trees and installed retaining walls.

**{¶8}** "With the exception of signing payroll checks, all of the clerical duties were performed by his girlfriend.

**{¶9}** "* * *

**{¶10}** "According to the [hearing] transcript[,] the employer had the claimant surveilled for approximately thirty-six hours by Choice Point Services. At the District Hearing Officer's hearing, Ms. Miller, the claims Director of

Choice Point Services, admitted that neither she nor anyone from her company observed the claimant performing any landscaping work for his business. (See page 90 of the transcript.)

**{¶11}** "* * *

**{¶12}** "Both [*State ex rel.*] *Nye* [*v. Indus. Comm.* (1986), 22 Ohio St.3d 75, 22 OBR 91, 488 N.E.2d 867] and [*State ex rel.*] *Durant* [*v. Superior's Brand Meats, Inc.* (1994), 69 Ohio St.3d 284, 631 N.E.2d 627] are factually different from this case because they each demonstrate a claimant actively engaged in his own business. Here the claimant was observed over several months for a total of thirty-six hours. During the observation the claimant was not seen at any job site despite the fact that he maintained accounts for thirty-five to forty customers.

**{¶13}** "Surely the claimant would have been seen working if he had carried on his business pursuits, after his injury as he had done before, because the nature of his business required that the work be done outside.

**{¶14}** "Instead the evidence supports the claimant's contention that he withdrew from nearly all business activities except those necessary to preserve the business until he was physically able to return to it. The Staff Hearing Officer does not believe the *Nye* and *Durant* [decisions] prevent the meager activities engaged in by the claimant nor do they require a self-employed individual to relinquish even that control which is absolutely necessary to preserve the existence of his pre-existing enterprise.

**{¶15}** "Based upon the foregoing facts, the Staff Hearing Officer finds that the claimant was not working [and] therefore fraud is not an issue in this case. The Staff Hearing Officer also finds that the claimant did not engage in activities inconsistent with the receipt of temporary total compensation during the period in question. While the concept of activities inconsistent with the receipt of disability benefits has no precise definite [sic] case of temporary total disability in general,

it encompasses situations where one engages in physical activities which exceeds [sic] the medical restrictions.

**{¶16}** "The employer has not produced evidence which shows any of the claimant's activities exceeding his physical capabilities[, and] therefore, the employer's argument fails and the claimant remains entitled to the temporary total disability benefits paid from June 24, 1998 to September 9, 1998 inclusive."

**{¶17}** The court of appeals declined Ford's request to order the commission to vacate its order. Ford now appeals here as a matter of right.

**{¶18}** TTC is prohibited to one who has returned to work. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586. At issue is whether claimant's activities for Nature's Creations constitute work. For the reasons that follow, we find that they do not.

**{¶19}** Work is not defined for workers' compensation purposes. We have held, however, that any remunerative activity outside the former position of employment precludes TTC. *State ex rel. Nye v. Indus. Comm.* (1986), 22 Ohio St.3d 75, 78, 22 OBR 91, 488 N.E.2d 867. We have also held that activities medically inconsistent with the alleged inability to return to the former position of employment bar TTC, regardless of whether the claimant is paid. *State ex rel. Parma Community Gen. Hosp. v. Jankowski,* 95 Ohio St.3d 340, 2002-Ohio-2336, 767 N.E.2d 1143, ¶ 15. Activities that are not medically inconsistent, however, bar TTC only when a claimant is remunerated for them. Id. at ¶ 14-15, 767 N.E.2d 1143. Work, moreover, does not have to be full-time or even regular part-time to foreclose TTC; even sporadic employment can bar benefits. *State ex rel. Blabac v. Indus. Comm.* (1999), 87 Ohio St.3d 113, 717 N.E.2d 336.

**{¶20}** Ford asserts that *Blabac* is controlling and bars TTC here. In *Blabac*, the claimant, John Blabac, was getting TTC when it was discovered that he was earning wages as a scuba diving instructor. While his partner did the

4

physical instruction, Blabac sat at poolside with a clipboard, grading the students. Id. at 113, 717 N.E.2d 336. Whether he lectured, prepared or graded written exams, or otherwise instructed students was not known.

**{¶21}** The commission terminated TTC and declared an overpayment. Blabac argued that only "substantially gainful" work could bar TTC, and that his work was neither substantial nor gainful. We disagreed with Blabac, holding that low paying and sporadic employment was still work. Because Blabac was paid for his efforts, we determined that they constituted work, and barred TTC. We suggested that wage-loss compensation would have been more appropriate for Blabac's circumstances.

**{¶22}** Ford argues that under *Blabac,* any work precludes TTC and asserts that *Blabac* forbids TTC here. Ford, however, overlooks the distinction between this case and *Blabac*. Blabac never disputed that his actions constituted work. He argued instead that he had not worked *enough* to prevent TTC. Claimant herein, on the other hand, argues that his activities were not work, rendering *Blabac* off point.

**{¶23}** Claimant's assertion has merit. Unlike the claimants in *Blabac, Nye, State ex rel. Johnson v. Rawac Plating Co*. (1991), 61 Ohio St.3d 599, 575 N.E.2d 837, and *State ex rel. Durant v. Superior's Brand Meats, Inc.* (1994), 69 Ohio St.3d 284, 631 N.E.2d 627, this claimant's activities did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept *his employees* doing the tasks that generated income.

**{¶24}** Obviously, application of this rationale must be applied on a case-by-case basis and only when a claimant's activities are minimal. A claimant should not be able to erect a façade of third-party labor to hide the fact that he or she is working. In this case, however, claimant's activities were truly minimal

and only indirectly related to generating income. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

Timothy J. Krantz, for appellant.

Betty D. Montgomery, Attorney General, and Dennis L. Hufstader, Assistant Attorney General, for appellee Industrial Commission.

Bevan & Associates and Raymond M. Powell, for appellee Christopher D. Posey.

_____