DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, John Sherry, filed this original action in mandamus. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On July 30, 2004, the magistrate rendered a decision, including findings of fact and conclusions of law, and therein recommended that this court deny the writ. (Attached as Appendix A.) Relator timely filed objections to the magistrate's decision, which are now before the court.
 {¶ 2} Relator argues that the magistrate incorrectly determined that respondent, Industrial Commission of Ohio ("the commission") properly exercised its continuing jurisdiction based on its staff hearing officer's mistake of law with respect to the issue whether relator's business activities conducted while he received temporary total disability ("TTD") compensation constituted "work" sufficient to justify termination of TTD. Relator also raises the related objection that the magistrate incorrectly determined that the commission did not abuse its discretion in ultimately finding that relator had engaged in work sufficient to warrant termination of TTD compensation.
 {¶ 3} Relator fails to raise any new issues in his objections and merely reiterates his arguments presented to the magistrate. Relator simply disagrees with the magistrate's interpretation of the established case law. We agree with the magistrate that the commission properly exercised its continuing jurisdiction in this case, and did not abuse its discretion in determining that relator's TTD compensation was fraudulently obtained.
 {¶ 4} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently and correctly discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
French and Wright, JJ., concur.
Wright, J., retired of the Ohio Supreme Court, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. John Sherry,: Relator, : v. : No. 04AP-78 Industrial Commission of Ohio : (REGULAR CALENDAR) and Clark Products, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on July 30, 2004 Lawrence W. Corman; Heinzerling Goodman, LLC, andJonathan H. Goodman, for relator.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} In this original action, relator, John Sherry, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders finding and exercising continuing jurisdiction over a staff hearing officer's order that denied a motion from the Ohio Bureau of Workers' Compensation ("bureau") to terminate temporary total disability ("TTD") compensation on grounds that the compensation was fraudulently obtained, and to enter an order reinstating the order of the staff hearing officer ("SHO").
Findings of Fact:
 {¶ 6} 1. On March 16, 2001, relator sustained an industrial injury while employed as a warehouse laborer for respondent Clark Products, Inc., a state-fund employer. The industrial claim was initially allowed for "sprain left shoulder/arm NOS, sprain thoracic region; herniated disc C7/T1." The claim is assigned claim number 01-339205.
 {¶ 7} 2. Beginning April 12, 2001, the bureau paid TTD compensation to relator based upon disability certifications from relator's attending physician.
 {¶ 8} 3. Relator underwent anterior cervical fusions on October 19, 2001 and September 30, 2002. The bureau authorized and paid for those surgeries.
 {¶ 9} 4. On April 2, 2002, the bureau's special investigations unit ("SIU") received a complaint from relator's employer alleging that relator was self-employed doing residential maintenance and remodeling work while receiving TTD compensation. The employer's complaint prompted an investigation into relator's activities during the period of his receipt of TTD compensation.
 {¶ 10} 5. Bureau special agent Cronig obtained information that relator had a commercial charge account at Home Depot since November 1998. Cronig obtained Home Depot's purchase records relating to the account. Home Depot produced video clips showing relator making 24 purchases from April 15, 2002 to July 29, 2002. Home Depot also produced records regarding relator's 62 purchase transactions between November 25, 2001 and August 3, 2002.
 {¶ 11} 6. Thereafter, Cronig obtained bank records showing deposits to relator's bank account. Cronig obtained copies of numerous checks deposited to relator's account from April 2001 through September 2002. Many of the checks contained notations indicating the type of work performed.
 {¶ 12} 7. Cronig also obtained copies of the bureau's warrants or checks issued to relator for the payment of TTD compensation.
 {¶ 13} 8. On December 3, 2002, relator was interviewed at his residence in Lakewood, Ohio by special agents Cronig and Mergen. Initially, according to a report filed by Cronig, relator repeatedly denied that he had worked or engaged in self-employment while receiving TTD compensation. According to Cronig's report, relator was then shown the records that SIU had obtained during the investigation, including the Home Depot purchase records and the bank account records. Cronig's report states in part:
* * * Sherry was then asked for his comments to the deposits. Sherry stated since he was injured, the checks represent him not losing the customers he had before he was injured. Sherry then verified this by placing his initials, date and time on the account profile sheet.
Further, Sherry was asked for a complete list of all of the places/jobs he worked at/held while receiving Temporary Total disability. Sherry stated he did not keep books/records. Further, Sherry stated he just wrote down a job on a piece of paper and would then throw it away. Sherry was also asked for the name of his accountant. Sherry stated he did his own taxes and that he would do the work that he could do.
Also, Sherry was asked why he didn't inform his attorney of record, physician of record, BWC, managed care organization or any other examining physician that he had continued to work after he was injured at Clark Products. Sherry responded by stating he made a mistake. Further, Sherry stated his mistake was that he continued to do selfemployment work while he received Temporary Total disability from the BWC.
In addition, Sherry was asked if there is anything else that he would like to talk about. Sherry responded by stating he didn't have a large business.
Next, Sherry was asked to, and complied with providing information in order for a written statement to be completed. In the statement, Sherry stated he misled Cronig and Mergen because Sherry was afraid of losing his disability because of his part-time business. Further, Sherry stated he had a pretty good idea that he was not allowed to work while receiving Temporary Total disability. In addition, Sherry stated he did not notify his attorney, Lawrence Corman, physician of record, BWC, managed care organization or any other examining physician of his work because he was afraid of losing his disability. Also, Sherry stated the photo from Home Depot appeared to [be] that of him with the person next to him identified as Steve Raider. Next, Sherry stated the purchases he made at Home Depot were for his self-employment business and for friends of his who had bad credit (Sherry was compensated for the purchases he made for his friends). Further, Sherry stated the type of work he performed while receiving disability was general home maintenance (painting, plumbing and roofing). Finally, Sherry stated the checks shown to him seemed to reflect payment of work he performed. * * *
 {¶ 14} 9. On December 11, 2002, the bureau moved to terminate TTD compensation and for a declaration of an overpayment of said compensation beginning June 23, 2001. In support, the bureau submitted SIU's report of its investigation.
 {¶ 15} 10. Following a January 23, 2003 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation and declaring an overpayment of said compensation beginning June 23, 2003. The DHO found that the compensation had been fraudulently obtained.
 {¶ 16} 11. Relator administratively appealed the DHO's order of January 23, 2003.
 {¶ 17} 12. Following a March 20, 2003 hearing, an SHO mailed the following order on April 9, 2003:
The order of the District Hearing Officer, from the hearing dated 01/23/2003, is vacated.
It is the finding of the Staff Hearing Officer that there is no overpayment of temporary total compensation for the period of 06/23/2001 through 12/01/2002. The claimant was injured on 03/16/2001 when he twisted and fell while stocking a rack. As a result of the allowed conditions the claimant underwent cervical fusions on 10/19/2001 and 09/30/2002. The claimant testified that his former position of employment in the warehouse required heavy lifting. There is no evidence, medical or otherwise, that the claimant was physically capable of returning to his former position of employment from 06/23/2001 through 12/01/2002.
At the time of the injury and continuing until the present the claimant operated a home repair business named Affordable Repairs. The Bureau of Workers' Compensation has alleged that an overpayment of temporary total compensation exists because the claimant's activities during the period of 06/23/2001 through 12/01/2002 were inconsistent with the receipt of temporary total. The Staff Hearing Officer finds that this assertion has not been proven. The preponderance of the evidence shows that the claimant continued to operate his home repair business during the period of temporary total disability. The claimant testified that he handled telephone inquiries from customers, examined job sites, gave estimates and purchased materials. The claimant stated that from 06/23/2001 forward he did none of the actual repair work and, in fact, hired others to do the manual labor. The claimant collected payment from customers and paid the workers who had performed the actual repairs. The claimant testified that he was physically unable to do the repair work and he just performed those tasks necessary to maintain his customer base during his period of temporary total disability.
The Bureau of Workers' Compensation has alleged that the claimant performed actual home repairs during the period in question. The Staff Hearing Officer finds that the preponderance of the evidence does not support this assertion.
Both customers and workers testified that the claimant did not perform any home repair work from 06/23/2001 through 12/01/2002. The Staff Hearing Officer also finds its [sic] inconceivable that the claimant performed repair work at the time of, and immediately, following the two cervical fusions.
The Bureau of Workers' Compensation has also failed to prove that the claimant was paid for any work performed from 06/23/2001 through 12/01/2002. The claimant testified that he made no profit from any of the home repairs and that all payments from customers went to cover the cost of materials and payments to workmen. The Staff Hearing Officer finds that the financial records on file fail to establish that the claimant had any earnings from home repairs completed during the period in question.
As the Bureau of Workers' Compensation has failed to establish that the claimant was paid for physical work consistent with his former position of employment during the period of 06/23/2001 through 12/01/2002, the Staff Hearing Officer finds that there is no overpayment of temporary total compensation. The claimant, therefore, did not obtain any temporary total compensation through the use of fraud. All temporary total was properly paid through 12/01/2002. Further temporary total compensation is to be paid on submission of competent proof of temporary total disability causally related to the allowed conditions. All proof on file was reviewed and considered.
 {¶ 18} 13. Following a March 20, 2003 hearing, a DHO additionally allowed the claim for "herniated disc at C5-6 and C6-7." The DHO's order was apparently not administratively appealed.
 {¶ 19} 14. The bureau and the employer filed notices of appeal from the SHO's order of March 20, 2003. On May 8, 2003, another SHO mailed an order refusing the appeals.
 {¶ 20} 15. On May 23, 2003, the bureau requested reconsideration of the SHO's May 8, 2003 refusal order.
 {¶ 21} 16. On June 27, 2003, the commission issued an interlocutory order that vacated the May 8, 2003 refusal order. The interlocutory order states:
It is the finding of the Industrial Commission that the Administrator has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake or law of such character that remedial action would clearly follow.
Specifically, it is alleged that the Staff Hearing Officer order of 03/20/2003 did not properly apply the standards ofParma Community General Hospital v. Jankowski (2002),95 Ohio St.3d 340 and Gyarman v. George E Fern Co.
(10th Dist.) 2002 Ohio App. Lexis 4484 in finding that the activities engaged in by the injured worker from 06/23/2001 to 12/01/2002 were not employment and that the injured worker was not correspondingly overpaid temporary total disability during this time period.
* * *
Based on these findings, the Industrial Commission directs that the Administrator's request for reconsideration filed 05/23/2003 is to be set for hearing to determine if the alleged mistake of law as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction.
In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issues. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under Ohio Revised Code 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issues.
This order is issued pursuant to State ex rel. Nichollsv. Indus. Comm. (1998) 81 Ohio St.3d 454, State exrel. Foster v. Indus. Comm. (1999) 85 Ohio St.3d 320, and in accordance with Ohio Administrative Code 4121-3-09.
 {¶ 22} 17. Following a September 3, 2003 hearing, two members of the three-member commission voted to vacate the SHO's order of March 20, 2003 (mailed April 9, 2003), and to grant the bureau's motion filed December 11, 2002. The commission's September 3, 2003 order states:
The Industrial Commission finds that the order of the Staff Hearing Officer is based on a clear mistake of law of such character that remedial action would clearly follow, and that the exercise of continuing jurisdiction is appropriate in this case. This clear mistake of law is concerning the Staff Hearing Officer's application of the incorrect legal standard in determining whether the employment activities engaged in by the injured worker following his injury were substantial enough to preclude the receipt of temporary total disability compensation. The Staff Hearing Officer found that the injured worker is eligible for temporary total disability compensation because the injured worker was not "paid for physical work consistent with his former position of employment during the period of 06/23/2001 through 12/01/2002." However, in determining whether there is an overpayment, of temporary total disability compensation, the proper test is whether the alleged work activity is inconsistent with an injured worker's physical restrictions; whether wages were received; or whether the injured worker's entrepreneurial activities amount to gainful employment. See State ex rel.Jankowski v. Parma Community Hospital (2002), 95 Ohio St.3d 340;State ex rel. Ford Motor Company v. Indus. Comm. (2002),98 Ohio St.3d 20; and State ex rel. Gyarmati v. George E. FernCo., (10th district) 2002 Ohio App. LEXIS 4484.
The Industrial Commission finds that the injured worker was overpaid temporary total disability compensation for the period of 06/23/2001 through 09/28/2002. The basis for this finding is that the injured worker ran a home repair business, named "Affordable Repairs," during the period in question while simultaneously receiving temporary total disability compensation. The injured worker was actively involved in the business operations. He gave estimates, purchased materials, supervised, and received payments from homeowners for all of the work that was performed. The injured worker enjoyed a steady business flow over the relevant period. Copies of checks deposited into the injured worker's Key Bank account reveal that he received remuneration totaling more than $17,000 for approximately sixty jobs that were performed from 06/23/2001 to 09/28/2002. The injured worker testified that he did not make any money operating his business over the period in question. He states that he kept only enough funds to cover the cost of materials and that the remainder went to the individuals who did the actual physical work. However, the Industrial Commission notes that the injured worker kept no accounting records to support this testimony, and the Industrial Commission simply does not find the injured worker's testimony credible.
The injured worker also testified that he did not perform any actual physical work for his business over the relevant dates. He has submitted several witness statements from homeowners and his workers indicating that he did not engage in any physical work on the jobs. However, the Industrial Commission notes that the Administrator has submitted written statements from two of the injured worker's customers, Jennifer Elaban, dated 03/20/2003, and Robin McNaught, dated 03/31/2003, indicating that the injured worker did actual physical home repair work, which he performed during the period in question. Moreover, the injured worker admitted in a signed statement to Bureau of Workers' Compensation investigators, dated 12/03/2002, that he performed general home maintenance such as painting, plumbing and roofing while receiving temporary total disability compensation. He further stated that he concealed his work activities for fear that he would not be able to receive temporary total disability compensation.
Even if the Industrial Commission were to accept the injured worker's testimony that he did not earn a profit and did not perform any physical work while operating "Affordable Repairs," he is, nevertheless, not entitled to receive temporary total disability compensation during the period of 06/23/2001 through 09/28/2002.
An injured worker is no longer permitted to receive temporary total disability compensation when he has returned to work.State ex rel. Ramirez v. Indus. Comm. (1980),69 Ohio St.3d 630. Even work that is medically consistent with the inability to return to the former position of employment bars temporary total disability compensation if wages are received. See State ex rel.Jankowski v. Parma Community Hospital and State ex rel. FordMotor Company v. Indus. Comm., supra. Even activities that are merely managerial can constitute work. See State ex rel. Nahoodv. Indus. Comm. (1999), Franklin App. No. 98AP-1157 and Stateex rel. Kasler v. Indus. Comm. (1996), Franklin App. No. 95AP-341. Accordingly, it is not necessary to show that the injured worker performed actual physical labor in order to find that he was working and, therefore, ineligible for temporary total disability compensation.
In addition, the fact that the injured worker did not receive wages or did not realize a profit while continuing to operate his business is not necessarily determinative of the issue. SeeState ex rel. Gyarmati v. George E. Fern Co., supra. InGyarmati, the injured worker continued to operate a wrestling business while receiving temporary total disability compensation for his industrial injury. His responsibilities included purchasing and selling concessions, contracting with wrestlers, paying taxes, participating in planning story lines and choreography for the wrestlers, participating in promoting the shows, training wrestlers, announcing matches, acting as a referee, and engaging in wrestling activities. There was insufficient evidence that the injured worker had any earnings while operating his wrestling business. Nevertheless, the court found that the injured worker's activities constituted gainful employment and upheld the Industrial Commission's finding that the injured worker was overpaid temporary total disability compensation. The court in Gyarmati explained that the issue before the Industrial Commission was whether the injured worker was involved in business activities for gain, not whether the gain was substantial, citing Greathouse v. Indus. Comm. (1993), Franklin App. No. 92AP-1390, 1993 Ohio App. LEXIS 5856, (stating that the injured worker's argument that his business did not return a profit was not determinative of the issue).
The court further explained that an injured worker who operates his own business has substantial control over its records. Thus, the absence of income in the form of wages or salary need not be a persuasive factor. See State ex rel. Brown v. Indus. Comm.
(1998), Franklin App. No. 97APD11-1452; and State ex rel. Dawsonv. Indus. Comm. (1998), Franklin App. No. 97APD11-1154, (concluding that lack of wages does not preclude a finding of gainful employment).
In the instant matter, it is clear that the injured worker continued to work while receiving temporary total disability compensation. As part of his home repair business, the injured worker had his own business card that he presented to customers; he spoke with the customers in person; he inspected the areas to be fixed or improved; he gave estimates to customers; he purchased the materials; he supervised the work; and he received payment from the customers, which he deposited into his own bankaccount [sic]. The Industrial Commission finds that these activities are entrepreneurial, and as such, amount to gainful employment. To further address the payment issue, the only evidence of the injured worker giving the entire amount of the customers' payments to his helpers after the cost of materials are the statements in the claim file and the testimony of the injured worker and his helpers at hearing today. The Industrial Commission does not find the statements and testimony credible and specifically notes that there is no documentation — like tax information (e.g., 1099's) — to corroborate the statements and testimony. The only documentation of any payments made to anyone is copies of canceled checks from the customers to the injured worker himself.
In addition, the written statements of Jennifer Elaban and Robin McNaught indicate that the injured worker actually engaged in actual physical labor while at their homes.
The injured worker testified that he did not profit from his activities. He stated that he only kept enough money to cover his expenses and that the remainder went to the individuals who helped with the physical work. As set forth above, whether or not the injured worker realized a profit while operating his business is not necessarily determinative. The Industrial Commission does not find the injured worker's purported lack of earnings to be a persuasive factor, especially considering that one who operates a business has substantial control over its records and that the injured worker in this case has asserted that he failed to keep any business records.
For these reasons, the Industrial Commission finds that the injured worker was overpaid temporary total disability compensation for the period of 06/23/2001 through 09/28/2002. The Industrial Commission notes that the Administrator has only provided copies of check deposits made into the injured worker's Key Bank account for work that he performed through 09/28/2002. The Administrator has not submitted sufficient evidence to support a finding of overpayment for the time period beyond 09/28/2002.
The Industrial Commission further finds that the Administrator has presented reliable, probative and substantial evidence that the injured worker obtained temporary total disability compensation from 06/23/2001 through 09/28/2002 by fraudulent means. Specifically, through attachments included with its 12/11/2002 motion, the Administrator has presented sufficient evidence to demonstrate the six elements of fraud set forth in the Industrial Commission Policy Statement and Guidelines, Memo S2 (May 7, 2001).
The Industrial Commission finds that the injured worker had a duty to disclose to the Bureau of Workers' Compensation the fact that he was operating a home repair business. The failure of his duty to disclose that information was material to the transaction at hand, as the concealment was made in order to receive temporary total disability compensation. The Industrial Commission further finds that the concealment of the fact that the injured worker was operating a home repair business was made with knowledge of its falsity, or with such utter disregard and recklessness as to whether it was true or false that knowledge may be inferred. The injured worker completed two C-84 Request for Temporary Total Compensation forms, dated 06/10/2002 and 08/30/2002, where he specifically indicated that he was not working. The C-84 form contains an explicit warning that an individual is not permitted to receive temporary total disability compensation if he is working.
The injured worker also endorsed Bureau of Workers' Compensation warrants for temporary total disability compensation covering the period at issue. The warrants contain the advisory that the signor is not entitled to the check if he is working. In addition, the injured worker received a temporary total entitlement letter from the Bureau of Workers' Compensation, dated 04/17/2002, which indicated that he was not entitled to receive temporary total disability compensation if he had returned to any kind of work. Furthermore, the injured worker received payment remittances attached to each warrant, warning him that he was not entitled to payment of temporary total disability compensation if he was working. Also, it is noted that the injured worker indicates in his signed statement, dated 12/03/2002, that he had a "pretty good idea that (he) was not allowed to work while receiving temporary total disability."
The Industrial Commission finds that the injured worker concealed the fact that he was working with the intent of misleading another into relying upon it. The injured worker indicates in his signed statement of 12/03/2002 that he did not inform his attorney, his physician or the Bureau of Workers' Compensation that he was working for fear that he would lose his disability payments. The Bureau of Workers' Compensation justifiably relied on the injured worker's misrepresentations and concealments of fact and that reliance resulted in an injury to the State Insurance Fund due to the improper payment of temporary total disability compensation.
Accordingly, the Industrial Commission finds that the injured worker committed fraud with regard to his receipt of temporary total disability compensation from 06/23/2001 to 09/28/2002. The Industrial Commission further directs that the overpayment of temporary total disability compensation declared herein is to be collected pursuant to the fraud provisions of R.C. 4123.511(J).
 {¶ 23} 18. On January 21, 2004, relator, John Sherry, filed this mandamus action.
Conclusions of Law:
 {¶ 24} Four issues are presented: (1) whether the commission abused its discretion by invoking continuing jurisdiction over the SHO's order of March 20, 2003; (2) whether the commission abused its discretion by failing to rely upon medical evidence to support an alleged finding that relator's activities are inconsistent with his claimed inability to perform his former position of employment; (3) whether the commission abused its discretion by allegedly failing to consider all the allowed conditions in the industrial claim; and (4) whether the commission improperly shifted the burden of proof to relator by allegedly faulting him for failing to disprove the bureau's claim that he was paid for his activities.
 {¶ 25} The magistrate finds: (1) the commission properly invoked its continuing jurisdiction; (2) the commission did not abuse its discretion by failing to rely upon medical evidence; (3) there was no abuse of discretion regarding the allowed conditions of the claim; and (4) the commission did not improperly shift the burden of proof.
 {¶ 26} Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 27} Turning to the first issue, R.C. 4123.52 states: The jurisdiction of the industrial commission * * * is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified. * * *
 {¶ 28} Continuing jurisdiction is not unlimited. State exrel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454,458-459. Its prerequisites are: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; and (5) error by inferior tribunal. Id.
 {¶ 29} To properly invoke its continuing jurisdiction, the commission must specifically identify the error or grounds for its exercise. Id. State ex rel. Foster v. Indus. Comm. (1999),85 Ohio St.3d 320; State ex rel. Royal v. Indus. Comm. (2002),95 Ohio St.3d 97.
 {¶ 30} In its interlocutory order mailed June 27, 2003, the commission identified a clear mistake of law in the SHO's order of March 20, 2003, that the commission found warranted adjudication of the request for reconsideration. The interlocutory order explained that the SHO's order did not properly apply the standard set forth in State ex rel. ParmaCommunity Gen. Hosp. v. Jankowski, 95 Ohio St.3d 340,2002-Ohio-2336. The interlocutory order also cited this court's decision in State ex rel. Gyarmati v. Indus. Comm., Franklin App. No. 01AP-1357, 2002-Ohio-4323.
 {¶ 31} In its September 3, 2003 order, the commission further addressed its continuing jurisdiction:
The Industrial Commission finds that the order of the Staff Hearing Officer is based on a clear mistake of law of such character that remedial action would clearly follow, and that the exercise of continuing jurisdiction is appropriate in this case. This clear mistake of law is concerning the Staff Hearing Officer's application of the incorrect legal standard in determining whether the employment activities engaged in by the injured worker following his injury were substantial enough to preclude the receipt of temporary total disability compensation. The Staff Hearing Officer found that the injured worker is eligible for temporary total disability compensation because the injured worker was not "paid for physical work consistent with his former position of employment during the period of 06/23/2001 through 12/01/2002." However, in determining whether there is an overpayment, of temporary total disability compensation, the proper test is whether the alleged work activity is inconsistent with an injured worker's physical restrictions; whether wages were received; or whether the injured worker's entrepreneurial activities amount to gainful employment. See State ex rel.Jankowski v. Parma Community Hospital (2002), 95 Ohio St.3d 340;State ex rel. Ford Motor Company v. Indus. Comm. (2002),98 Ohio St.3d 20; and State ex rel. Gyarmati v. George E. FernCo., (10th district) 2002 Ohio App. LEXIS 4484.
 {¶ 32} In Parma, Cheryl Jankowski ("Jankowski") injured her right arm while employed as a hospital nurse. Jankowski's brother was working at Child Support Advocates ("CSA"). At various times, Jankowski answered the phones and advised clients at CSA; however, she received no wages or other remuneration for her activities. Jankowski testified that she occasionally went into CSA's office to assist her brother who was having personal problems at the time.
 {¶ 33} In the Parma case, the commission denied the employer's request to terminate TTD compensation after finding that Jankowski had not performed any "work" that would preclude TTD compensation.
 {¶ 34} The Parma court refused to disturb the commission's decision, explaining, at ¶ 7:
Three key facts are undisputed: (1) claimant, to some degree, answered phones and advised clients at CSA; (2) these activities were not inconsistent with her allegation that she was medically unable to resume her former duties as a nurse; and (3) there was no evidence of wages or other remuneration for these activities. The last two facts raise a question to which the parties, surprisingly, devote little attention: Do a claimant's activities in a workplace environment preclude TTC if (1) the claimant is not being remunerated and (2) the duties are not medically inconsistent with her claim that she could not perform her former position of employment? We find that they do not.
 {¶ 35} In State ex rel. Ford Motor Co. v. Indus. Comm.,98 Ohio St.3d 20, 2002-Ohio-7038, at ¶ 19, the court succinctly summarized its holding in the Parma case:
* * * We have also held that activities medically inconsistent with the alleged inability to return to the former position of employment bar TTC, regardless of whether the claimant is paid. * * * Activities that are not medically inconsistent, however, bar TTC only when a claimant is remunerated for them. * * *
 {¶ 36} The magistrate observes that, in its September 3, 2003 order, the commission cited to Parma and Ford for the legal test or standard applicable to the instant case. The commission also cited to this court's decision in Gyarmati, supra.
 {¶ 37} Viewing the SHO's order of March 20, 2003, in its entirety, it is clear to this magistrate that the SHO applied a standard or test that has no basis in case law. In viewing the SHO's order in its entirety, the magistrate initially observes that there is no citation to authority and there is no direct statement of the standard or test being applied. However, the standard applied by the SHO is at least implicit in the following sentence of the order:
As the Bureau of Workers' Compensation has failed to establish that the claimant was paid for physical work consistent with his former position of employment during the period of 06/23/2001 through 12/01/2002, the Staff Hearing Officer finds that there is no overpayment of temporary total compensation. * * *
 {¶ 38} The above-quoted sentence strongly suggests that the SHO misunderstood the legal standard set forth in Parma andFord. The above-quoted sentence strongly suggests that, unless the bureau can prove that relator was paid for physical work consistent with the duties of the former position of employment, relator remains entitled to TTD compensation. That suggestion is clearly error. That suggestion simply ignores well-settled law that alternative employment of any kind bars TTD compensation.
 {¶ 39} While TTD compensation is indeed barred if the bureau were to prove that relator was paid for physical work consistent with his former position of employment, that is not the only scenario of claimant's activity that can bar TTD compensation. See Parma; Ford, supra.
 {¶ 40} Accordingly, based upon the foregoing analysis, the magistrate finds that the commission appropriately identified a clear mistake of law that required it to exercise its continuing jurisdiction.
 {¶ 41} The second issue is whether the commission abused its discretion by failing to rely upon medical evidence to support analleged finding that relator's activities are inconsistent with his claimed inability to perform his former position of employment. This issue is easily answered. A careful reading of the commission's September 3, 2003 order shows that the commission did not render a finding that relator's activities are inconsistent with his claimed disability, and on that basis conclude that relator was not entitled to TTD compensation during the period at issue.
 {¶ 42} A careful reading of the commission's order discloses that the commission's conclusion that relator was not entitled to TTD compensation is premised upon two independent grounds: (1) relator engaged in remunerative self-employment; and (2) even if the self-employment did not produce a profit, the activities were entrepreneurial, and, as such, amount to gainful employment. Clearly, those two grounds do not require medical evidence or medical expertise for support.
 {¶ 43} The commission's September 3, 2003 order does note that statements from two of relator's customers, Jennifer Elaban and Robin McNaught, indicate that relator performed the actual repair work himself rather than limiting his involvement to supervising. The commission also noted that relator admitted to the SIU agents that he performed general home maintenance such as painting, plumbing, and roofing while receiving TTD compensation. Nevertheless, there is no indication in the commission's order that the commission concluded that those activities are inconsistent with his claimed inability to return to the heavy lifting allegedly involved with his warehouse job with Clark Products, Inc.
 {¶ 44} From the above-analysis, the magistrate does not intend to suggest that he agrees with relator's suggestion that medical evidence is always needed to support a commission determination that a claimant's activities are inconsistent with his claimed disability. That suggested issue is not before this court, and, thus, need not be addressed. See Ford, supra, at ¶ 15 (the Ford court notes the probable consequences for a claimant getting TTC for a back injury who is seen single-handedly pulling out a neighbor's engine block).
 {¶ 45} The third issue is whether the commission abused its discretion by allegedly failing to consider all the allowed conditions in the industrial claim. As previously noted, following a March 20, 2003 hearing, a DHO additionally allowed the claim for "herniated disc at C5-6 and C6-7." The additional claim allowances do not appear among the allowed conditions listed on the commission's order of September 3, 2003.
 {¶ 46} According to relator, it was an abuse of discretion that the commission presumably did not consider the additionally allowed conditions in its September 3, 2002 order. However, relator fails to explain how consideration of the additionally allowed conditions was relevant to the issues before the commission on September 3, 2002. In fact, there was no issue before the commission on September 3, 2002, that involved the additionally allowed conditions. Accordingly, relator's claim for an abuse of discretion lacks merit.
 {¶ 47} The fourth issue is whether the commission improperly shifted the burden of proof to relator by allegedly faulting relator for failing to disprove the bureau's claim that he was paid for his activities.
 {¶ 48} The bureau submitted to the commission copies of checks and bank records showing that relator received remuneration totaling more than $17,000 for approximately 60 jobs that were performed from June 23, 2001 to September 28, 2002. According to the commission's order, relator testified that he did not make any money operating his business over the period in question. He testified that he kept only enough funds to cover the cost of materials and that the remainder went to the individuals who did the actual physical work. However, the commission noted that relator kept no accounting records to support this testimony. The commission found that relator's testimony was not credible.
 {¶ 49} It is true that the bureau had the burden of proof with respect to its motion to terminate TTD compensation and to declare an overpayment. See State ex rel. Quarto Mining Co. v.Foreman (1997), 79 Ohio St.3d 78, 83-84. However, the commission did not improperly shift the burden of proof to relator on the issue of remuneration as relator contends.
 {¶ 50} The bureau presented a prima facie case that relator receive remuneration for his work activities. The bureau submitted copies of checks deposited into relator's bank account totaling more than $17,000 for approximately 60 jobs that were performed from June 23, 2001 to September 28, 2002. The commission could draw an inference from this evidence that relator was remunerated for his work activities. The commission was not required to believe relator's testimony that he kept none of the remuneration and, thus, made no profit from his business. While relator had an opportunity to rebut the inference that he received remuneration for his work activities, he failed to do so. The commission's placing of significance upon relator's inability to produce accounting records to support his testimony was not tantamount to a shifting of the burden of proof. The commission simply gave its reasoning as to why it disbelieved relator's testimony.
 {¶ 51} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke 
KENNETH W. MacKE MAGISTRATE