DECISION
{¶ 1} Relator, Manuela Elking, filed this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting, in part, the February 10, 2005 motion of the Ohio Bureau of *Page 2 
Workers' Compensation ("bureau") and declaring an overpayment of temporary total disability ("TTD") compensation for the closed period December 31, 2002 through August 13, 2003, and to enter an order denying the bureau's motion.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant the requested writ. (Attached as Appendix A.) No party filed objections to the magistrate's findings of fact, and we adopt them as our own. However, as to the magistrate's conclusions of law, the commission argues the following:
 The magistrate erred in holding that the receipt of wages did not disqualify TTD for the same period.
 {¶ 3} We reject the commission's argument for the reasons given by the magistrate. In short, the standard for declaring an overpayment of TTD compensation is not, as the commission argues, whether a claimant simply received wages while also receiving TTD compensation. Rather, the standard is whether a claimant received remuneration in exchange for work activity. Here, as the full commission conceded, the record contains no evidence that relator performed any work during the TTD period. Therefore, there was no overpayment.
 {¶ 4} Finding no error of law or other defect on the face of the magistrate's decision, we overrule the commission's objection and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we grant a writ of mandamus ordering the *Page 3 
commission to vacate its September 14, 2005 order finding an overpayment of TTD compensation, and to enter an order denying the bureau's February 10, 2005 motion.
Objection overruled, writ of mandamus granted.
McGRATH and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on June 27, 2007 IN MANDAMUS {¶ 5} In this original action, relator, Manuela Elking, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting in part the February 10, 2005 motion of the Ohio Bureau of *Page 5 
Workers' Compensation ("bureau") and declaring an overpayment of temporary total disability ("TTD") compensation for the closed period December 31, 2002 through August 13, 2003, and to enter an order denying the bureau's motion.
Findings of Fact: {¶ 6} 1. On December 12, 2002, relator sustained an industrial injury which is allowed for "contusion of right shoulder; sprain thoracic; lumbar sprain; aggravation of pre-existing spondylolisthesis at L5-S1; herniated disc at L5-S1," and is assigned claim number 02-874402.
 {¶ 7} 2. Following the industrial injury, relator began receiving TTD compensation from the bureau in this state-fund claim.
 {¶ 8} 3. On February 10, 2005, the bureau moved for a declaration that TTD compensation had been overpaid from December 31, 2002 through August 13, 2003, and for a finding that the TTD compensation had been obtained fraudulently.
 {¶ 9} 4. In support of its motion, the bureau submitted payroll records from Paul Wade Enterprises showing that relator was paid for cleaning, painting and grass mowing activities during the time period at issue.
 {¶ 10} 5. In further support of its motion, the bureau submitted canceled checks payable to relator from Paul Wade Enterprises that correspond to the time period at issue.
 {¶ 11} 6. The bureau also submitted a questionnaire that had been completed by Paul Wade ("Wade"). On the questionnaire, Wade indicated that relator had been employed part-time by Paul Wade Enterprises starting October 1, 2002 and ending *Page 6 
July 4, 2003. One of the questions asked for a job description. In response, Wade wrote:
 Elking did whatever work she wanted to do. Her man friend, our manager, did the rest. Elking usually painted vacant apartments, cleaned them [and] the hallways (4, 2 story) [and] cut the lawn using a walk behind self propelled mower.
 {¶ 12} 7. The bureau's motion was scheduled for hearing before a district hearing officer ("DHO") on April 8, 2005.
 {¶ 13} 8. On April 7, 2005, Wade executed an affidavit, stating:
 2. I am the owner of Paul Wade Enterprises[.] * * *
 3. Manuela Elking was a tenant at Paul Wade Enterprises dba Cherrywood Apartments while I was the owner.
 4. I paid Manuela Elking for the work done on the premises at Cherrywood Apartments from October 2002 to June 2003. She did perform actual work for me prior to her industrial injury.
 5. I never saw Manuela Elking do any of this work after her injury on December 12, 2002.
 6. When I did see Manuela Elking, she looked injured and complained of pain in her back.
 7. The person in the best position to know who performed the actual work is Barry Roberts. He was the manager of Paul Wade Enterprises dba Cherrywood Apartments and maintained the apartments.
 8. I trusted Barry Roberts to do all the work and when he needed help he brought on additional hands. Barry Roberts is the one who oversaw the work performed. Barry Roberts was on call and took care of everything for me while at Cherrywood Apartments. *Page 7 
 9. Per Barry Roberts['] instructions, I continued to make the checks for the work performed payable to Manuela Elking for distribution as required.
 {¶ 14} 9. On April 8, 2005, relator executed an affidavit, stating:
 2. While I was a tenant at Cherrywood Apartments I did part-time sporadic work such as cleaning, mowing grass, painting, and other tasks.
 3. I worked up until my industrial injury.
 Once I was injured, I did not work at the apartments and my two children, Veronica and David, did the work.
 {¶ 15} 10. On April 8, 2005, Barry Roberts executed an affidavit, stating:
 2. I performed maintenance and was the manager of Cherrywood Apartments while Paul Wade was the owner.
 3. Manuela Elking was hired on a part-time basis to clean apartments and hallways, mow grass, and paint apartments.
 4. Manuela did not work for me after December 12, 2002, the date of her industrial injury.
 5. Manuela's two children, Veronica and David, took over the work after her injury. They cleaned, mowed grass, and painted.
 6. I requested Paul Wade continue to make the checks for the work performed payable to Manuela Elking.
 {¶ 16} 11. Following an April 8, 2005 hearing, a DHO issued an order granting the bureau's motion. The DHO's order declared an overpayment of TTD compensation and rendered a finding that the compensation was fraudulently obtained.
 {¶ 17} 12. Relator administratively appealed the April 8, 2005 DHO's order. *Page 8 
 {¶ 18} 13. Following a June 3, 2005 hearing, a staff hearing officer ("SHO") issued an order vacating the DHO's order and denying the bureau's motion. The SHO's order explains:
 The Staff Hearing Officer finds that the Bureau of Workers' Compensation has not met its burden of demonstrating that the injured worker worked while receiving temporary total disability compensation from 12/31/2002 through 08/13/2003. The Staff Hearing Officer finds that the injured worker sustained the injury that is recognized in this claim on 12/12/2002. Thereafter[,] the injured worker was off work as the result of the allowed conditions in this claim.
 The Administrator alleges that while the injured worker was off work from her full time position with the named employer in this claim, the injured worker continued working at a part time position that she had before the date of injury in this claim.
 The injured worker testified at the hearing that she did not work during the period from 12/31/2002 through 08/13/2003. The injured worker testified that payment that she received during this period was for work that was completed for her part time employer by her children. The injured worker's children Veronica Barrett and David Cavel appeared at the hearing and testified that they completed the work. The injured worker's supervisor at the part time job, Mr. Roberts (who is also a personal friend of the injured worker's) also appeared at the hearing and testified that the injured worker performed no work and that the money paid was for work activity actually performed by the children. Paul Wade, the employer for whom the injured worker allegedly worked at the part time job, submitted an affidavit to the claim file which indicates that he never saw the injured worker work after the date of the injury. His affidavit further indicates that when he saw the injured worker after the injury she complained of back pain and looked injured.
 The Staff Hearing Officer finds that there is no testimony or evidence from any party to indicate that anyone ever saw the injured worker perform work activity during the period from *Page 9 
12/31/2002 through 08/13/2003. The Staff Hearing Officer further finds that the injured worker's testimony that the children performed the work and that the checks for the work were made out to her because the children were minors without bank accounts is not incredible.
 Therefore[,] the Administrator's motion is denied for failure of the Administrator to demonstrate that the injured worker was working.
 This order is based upon the testimony of the injured worker, Mr. Roberts, Ms. Barrett and Mr. Cavel at the hearing. This order is further based upon the affidavit of Mr. Wade.
 {¶ 19} 14. The bureau administratively appealed the SHO's order of June 3, 2005.
 {¶ 20} 15. Following a September 14, 2005 hearing before the three-member commission, the commission issued an order stating:
 * * * It is the decision of the Industrial Commission that the Administrator's appeal, filed 08/05/2005, is granted, and the order of the Staff Hearing Officer, dated 06/03/2005, is modified to the extent of this order. The Administrator's motion, filed 02/10/2005, is granted to the extent of this order.
 The Industrial Commission declares an overpayment of temporary total disability compensation for the closed period of 12/31/2002 through 08/13/2003. The Industrial Commission finds that the injured worker was not entitled to temporary total disability compensation over the specified period for the reason that she received wages for work performed over this period. However, the Commission denies that portion of the Administrator's 02/10/2005 motion requesting a finding of fraud regarding the injured worker's receipt of temporary total disability compensation over the specified period; the Commission finds that the Administrator has not met the burden of demonstrating that the injured worker committed fraud in receiving temporary total disability compensation. Accordingly, the Commission orders that the *Page 10 
overpayment be recouped pursuant to the non-fraud provisions of R.C. 4123.511(J).
 The Industrial Commission finds that at the time of her industrial injury, the injured worker was employed by two employers: Dunbar Armored Inc., where she worked full-time as an armored car driver and where she sustained her industrial injury; and Paul Wade Enterprises, where she worked part-time for the owner of the apartment complex at which she lived, with her duties including painting, cleaning, and lawn-mowing activities at the complex. Documents included with the Administrator's motion demonstrate that the injured worker received wages from Paul Wade Enterprises for work performed during the time period at issue, 12/31/2002 through 08/13/2003. The Commission bases this finding on the copies of the payroll records on file from Paul Wade Enterprises, which indicate the amounts the injured worker was being paid for work performed at the apartment complex during the relevant period, as well as the copies of the resulting paychecks made payable to the injured worker for the work that was performed, all of which the injured worker endorsed and cashed.
 The Commission further finds that included in the documentation attached to the Administrator's motion are copies of the checks issued by the Bureau of Workers' Compensation representing an award of temporary total disability compensation to the injured worker from 12/31/2002 through 08/13/2003, which the injured worker endorsed and which demonstrate that she received temporary total disability compensation over the time period that she received wages from her part-time employer, Paul Wade Enterprises. It is well-established that an injured worker is not entitled to receive temporary total disability compensation for periods during which she received wages for work performed; therefore, the Commission declares that temporary total disability compensation was overpaid for the period from 12/31/2002 through 08/13/2003.
 At hearing, the injured worker contended that between 12/31/2002 and 08/13/2003 she did not actually perform the work activity for Paul Wade Enterprises that is documented in the attachments to the Administrator's motion. Both the *Page 11 
injured worker and Mr. Roberts testified, consistent with their 04/08/2005 affidavits on file, that the injured worker's minor children actually performed the work at the apartment complex during the relevant time period. This testimony was not refuted, and there was no evidence presented that indicated the injured worker performed any work during the relevant period. Nevertheless, the Commission finds that the injured worker herself received the wages for the work that was performed for Paul Wade Enterprises during the time period in question, and she testified that the earnings were placed into her bank account and helped her meet her financial obligations. Therefore, regardless of who performed the work, the Commission finds that the injured worker received wages from Paul Wade Enterprises, which precludes her receipt of temporary total disability compensation for the period from 12/31/2002 through 08/13/2003.
 As indicated above, the Commission finds that the Administrator has not met the burden of demonstrating that the injured worker's receipt of temporary total disability compensation from 12/31/2002 through 08/13/2003 resulted from fraudulent activity on her part. The Commission finds that the Administrator has presented insufficient evidence to satisfy the requirements of Memo S2 of the Industrial Commission Policy Statements and Guidelines with regard to a finding of fraud. Specifically, the Administrator has not presented sufficient evidence to support a finding that the injured worker knowingly used deception to obtain the overpayment. The Commission does not find the preponderance of the evidence to demonstrate the injured worker intended to mislead the BWC by misrepresenting or concealing any material facts. Therefore, the overpayment of temporary total disability compensation declared herein is to be recouped pursuant to the non-fraud provisions of R.C. 4123.511(J).
 {¶ 21} 16. On November 1, 2006, relator, Manuela Elking, filed this mandamus action. *Page 12 
Conclusions of Law: {¶ 22} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 23} In State ex rel. Ford Motor Co. v. Indus. Comm.,98 Ohio St.3d 20, 2002-Ohio-7038, at ¶ 18-19, the Supreme Court of Ohio summarized law pertinent to this action. The Ford court states:
 TTC is prohibited to one who has returned to work. R.C. 4123.56(A); State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586. * * *
 Work is not defined for workers' compensation purposes. We have held, however, that any remunerative activity outside the former position of employment precludes TTC. State ex rel. Nye v. Indus. Comm. (1986), 22 Ohio St.3d 75, 78, 22 OBR 91, 488 N.E.2d 867. We have also held that activities medically inconsistent with the alleged inability to return to the former position of employment bar TTC, regardless of whether the claimant is paid. State ex rel. Parma Community Gen. Hosp. v. Jankowski, 95 Ohio St.3d 340, 2002-Ohio-2336, 767 N.E.2d 1143, ¶ 15. Activities that are not medically inconsistent, however, bar TTC only when a claimant is remunerated for them. Id. at ¶ 14-15, 767 N.E.2d 1143. Work, moreover, does not have to be full-time or even regular part-time to foreclose TTC; even sporadic employment can bar benefits. State ex rel. Blabac v. Indus. Comm. (1999), 87 Ohio St.3d 113, 717 N.E.2d 336.
 {¶ 24} In State ex rel. Honda of Am. Mfg. Co. v. Indus. Comm.,113 Ohio St.3d 5, 2007-Ohio-969, at ¶ 20-25, the court had occasion to summarize Ford:
 In Ford, Christopher D. Posey had a full-time job at Ford Motor Company and also owned a lawn-care business. In 1998, Posey was hurt at Ford and began receiving temporary total disability compensation. His injury also affected his ability to do lawn work, forcing him to hire more employees to cover his former share of the workload. *Page 13 
 Posey's involvement with his business while receiving compensation prompted Ford to seek a declaration of overpayment. Ford alleged that Posey's participation in his business constituted work and prohibited temporary total disability compensation. Evidence regarding Posey's post-disability participation in his business, however, established only that Posey signed his four workers' paychecks and, on a few occasions, fueled and drove riding lawnmowers onto a truck. Posey did no landscaping work in connection with his business while receiving temporary total disability compensation.
 The commission upheld Posey's receipt of compensation:
 "`The evidence supports the claimant's contention that he withdrew from nearly all business activities except those necessary to preserve the business until he was physically able to return to it. The Staff Hearing Officer does not believe [that State ex rel.] Nye [v. Indus. Comm. (1986), 22 Ohio St.3d 75, 22 OBR 91, 488 N.E.2d 867] and [State ex rel.] Durant [v. Superior's Brand Meats, Inc. (1994), 69 Ohio St.3d 284, 631 N.E.2d 627] prevent the meager activities engaged in by the claimant nor do they require a self-employed individual to relinquish even that control which is absolutely necessary to preserve the existence of his preexisting enterprise.'" Ford, 98 Ohio St.3d 20, 2002-Ohio-7038, 780 N.E.2d 1016, ¶ 14.
 We agreed. Distinguishing several cases, we held that Posey's activities "did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept his employees doing the tasks that generated income." (Emphasis sic.) Id. at ¶ 23. We concluded, however, on a cautionary note:
 "Obviously, application of this rationale must be applied on a case-by-case basis and only when a claimant's activities are minimal. A claimant should not be able to erect a façade of third-party labor to hide the fact that he or she is working. In this case, however, claimant's activities were truly minimal *Page 14 
and only indirectly related to generating income." 98 Ohio St.3d 20, 2002-Ohio-7038, 780 N.E.2d 1016, ¶ 24.
(Fn. omitted.)
 {¶ 25} Here, the commission's order of September 14, 2005 sets forth a key finding:
 At hearing, the injured worker contended that between 12/31/2002 and 08/13/2003 she did not actually perform the work activity for Paul Wade Enterprises that is documented in the attachments to the Administrator's motion. Both the injured worker and Mr. Roberts testified, consistent with their 04/08/2005 affidavits on file, that the injured worker's minor children actually performed the work at the apartment complex during the relevant time period. This testimony was not refuted, and there was no evidence presented that indicated the injured worker performed any work during the relevant period. * * *
 {¶ 26} Notwithstanding the unequivocal finding by the commission that there is no evidence that relator had performed any work, the commission, in its brief at 6-7, seemingly attempts here to embellish such finding:
 * * * If Elking is entitled to TTD then Elking must have this court and the commission believe that Elking left her 10-and 14-year old children unsupervised in a [sic] vacant apartments with the toxic paint fumes, that she in no way supervised or advised her minor children in the painting, cleaning or mowing the grass, and that Elking did not drive to get gas for the mower or supervise her children using the mower. * * *
 {¶ 27} Notwithstanding speculation from the commission's counsel that relator must have supervised her childrens' work and driven to obtain fuel for the mower, the commission made no such finding in the administrative proceedings. Nor is there any evidence to support active supervision of the childrens' work by relator nor trips to the *Page 15 
gas station to fuel the mower. Again, the commission's order unequivocally finds that relator performed no work for the wages she received for the work performed by her minor children.
 {¶ 28} Obviously, the commission cannot be allowed here to embellish its finding clearly stated in its order.
 {¶ 29} In fact, the commission concluded that relator's receipt of the wages precluded her receipt of TTD compensation "regardless of who performed the work." That is, the commission believed that it was relator's receipt of the wages that determined her ineligibility for TTD compensation, regardless of whether relator performed any activity related to the work of her children.
 {¶ 30} In Ford, presumably, the claimant received payments from his lawn care customers for the work performed by his employees. While that fact was not viewed to be material in Ford, by the same token, relator's receipt of payments for the work performed by her minor children cannot be viewed as material to TTD eligibility in this case.
 {¶ 31} Receipt of remuneration bars TTD compensation only when it is received in exchange for work activity. Here, given that the work was performed by minor children, we would expect that the remuneration for such work would be given to the parent of the minor children.
 {¶ 32} Moreover, even if this court could find that relator, as the parent of two minor children, must have exercised some type of supervision over her childrens' employment, that would not automatically disqualify relator for TTD compensation. *Page 16 Honda, supra. Again, we can only speculate on the extent of such supervision in the absence of any evidence in the record that such supervision actually occurred.
 {¶ 33} Given that we can only speculate as to the extent of supervision that might have been exercised, relator's alleged supervision of her children cannot be some evidence of activity performed in exchange for remuneration.
 {¶ 34} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its September 14, 2005 order finding an overpayment of TTD compensation, and to enter an order denying the bureau's February 10, 2005 motion.
 KENNETH W. MACKE, MAGISTRATE *Page 1