DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} In this original action in mandamus, relator, Larry L. Cassano, requests a writ of mandamus that orders respondent Industrial Commission of Ohio ("commission") to vacate its order which terminated his temporary total disability ("TTD") compensation based upon the finding that relator had been engaged in work activity inconsistent with the receipt of TTD compensation and also finding that relator had engaged in fraud for the period of January 3, 2001 through January 27, 2002.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that there was some evidence in the record to support a finding that relator's activities were inconsistent with the receipt of TTD compensation and that there was some evidence to support a finding of fraud. The magistrate accordingly recommended that this court deny the requested writ of mandamus. Relator has filed objections to the magistrate's decision, and the matter is now before this court for a full, independent review.
 {¶ 3} Relator does not challenge the magistrate's findings of fact. However, following our independent review of the record, we find two incorrect dates in the magistrate's findings of fact. Concerning the magistrate's eighth finding of fact, agent Graven went to Tower City Motorcars ("Tower City") on October 30, 2001, not November 19, 2001. Regarding the magistrate's tenth finding of fact, the hearing before the district hearing officer ("DHO") was on April 18, 2002, not February 18, 2002. Also, for purposes of clarification, in reference to the magistrate's seventh finding of fact, the record indicates that Billy Becker was paid $50 "for Beretta 90 * * *." (Stip.R. 235.)
 {¶ 4} By his objections to the magistrate's decision, relator argues that the magistrate erroneously found some evidence in the record to support the commission's decision. Relator contends that his activities at Tower City did not constitute "work," such as to preclude TTD compensation. We find relator's arguments to be unpersuasive, as we find no error of law in the magistrate's decision.
 {¶ 5} Preliminarily, we observe, as did the magistrate, that the only issue disputed at the hearing before the DHO was whether relator was guilty of fraud. The DHO declared relator overpaid for all TTD compensation received for the time period of January 3, 2001 through January 27, 2002. A transcript of the hearing before the DHO is not included in the record. However, in her decision, the DHO indicated her reliance "upon claimant's counsel's statement stipulating that claimant was overpaid temporary total compensation during this period." (Appendix at ¶ 33.)
 {¶ 6} Even assuming this issue was not waived and may be raised in this mandamus proceeding, the commission did not abuse its discretion in this regard. Relator contends that Ford MotorCo. v. Indus. Comm., 98 Ohio St.3d 20, 2002-Ohio-7038, is controlling in this case. We disagree. The Supreme Court of Ohio, in Ford Motor Co., recognized that the mere ownership of a business, without more, is not incompatible with receiving disability compensation. The court, in Ford Motor Co., at ¶ 23, distinguished the case with State ex rel. Blabac v. Indus.Comm. (1999), 87 Ohio St.3d 113, State ex rel. Nye v. Indus.Comm. (1986), 22 Ohio St.3d 75, State ex rel. Johnson v. RawacPlating Co. (1991), 61 Ohio St.3d 599, and State ex rel. Durantv. Superior's Brand Meats, Inc. (1994), 69 Ohio St.3d 284. The court determined that "unlike the claimants" in the cases listed above, "this claimant's activities did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept hisemployees doing the tasks that generated income." (Emphasis sic.) Ford Motor Co., at ¶ 23.
 {¶ 7} In State ex rel. Campbell v. Indus. Comm., Franklin App. No. 02AP-1253, 2003-Ohio-4824, this court discussed the application of Ford Motor Co. Of particular significance to the case at bar was this court's observation, at ¶ 53, that:
* * * some entrepreneurial activities and some investment activities may be sufficiently extensive to be deemed employment. Where a person is actively involved in operating a business, the commission may conclude that his or her activities are inconsistent with receipt of total disability compensation. Involvement such as making sales or assisting in day-to-day operations of a shop may be viewed as employment incompatible with disability, as opposed to mere ownership or managing one's personal finances. * * *
 {¶ 8} Although relator may have reduced his work activities at Tower City after his injury, there is some evidence in the record that he continued to engage in work activities that directly related to generating income. As stated by the magistrate, "while * * * relator was involved in activities that simply maintained the operation of the business (writing checks, maintaining his dealer's license, paying for supplies) there was other evidence that he was performing mechanic work on cars and that he may have been attending auto auctions." (Appendix at ¶ 39.) Relator's arguments to the contrary, the magistrate correctly determined that, even in light of the Ford Motor Co.
decision, the commission did not abuse its discretion in terminating TTD compensation and finding TTD overpayment.
 {¶ 9} The second issue before the magistrate was whether there was some evidence in the record to support the commission's finding that relator was engaged in fraud. Notably, relator, in his objections, does not directly challenge the magistrate's analysis with respect to fraud. Presumably, relator would argue that fraud would not have been at issue if the commission had determined that relator was not engaged in work activities inconsistent with his TTD compensation.
 {¶ 10} We concur with the magistrate's determination that there is some evidence in the record to support a finding that relator engaged in fraud. As noted by the magistrate, when relator was contacted by an Ohio Bureau of Workers' Compensation ("BWC") investigator, on January 26, 2001, relator informed the investigator that he had not worked since his injury and that his business was on hold. Evidence in the record indicates that relator worked at Tower City subsequent to his injury. Additionally, the record contains copies of endorsed "warrants" or checks issued by BWC to relator, which provided a warning to the relator that he was not entitled to the disability compensation "if you are working." (Stip.R. 272-291.)
 {¶ 11} In her analysis of the fraud issue, the magistrate determined that, aside from the checks paid to Mike Beesley indicating payment for repair work on automobiles and for title work, there was no additional evidence that relator paid others to perform any other work at Tower City. The magistrate noted that, even though relator indicated that he paid Billy Becker to attend the auto auctions, he provided no evidence to substantiate this claim. We find that the record does indicate that relator paid Mr. Becker $50 "for Beretta 90 * * *." (Stip.R. 235.) Whether this payment related to Mr. Becker attending an auto auction or purchasing an automobile at an auto auction, is uncertain. Nevertheless, even if this does indicate that relator paid Mr. Becker for attending an auto auction or purchasing an automobile at an auto auction, the record still supports a finding of fraud. Therefore, even though we do not completely agree with the magistrate's assessment of the possible extent others worked for relator, we agree with the magistrate's ultimate determination that there was some evidence in the record to support a finding of fraud.
 {¶ 12} Therefore, we overrule relator's objections to the magistrate's decision. Pursuant to Civ.R. 53(E)(4)(b), we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except to the extent discussed above in ¶ 3 regarding the magistrate's findings of fact, and except to the extent the magistrate's conclusions of law are inconsistent with our discussion in ¶ 11. In accordance with the magistrate's decision, we hereby deny the requested writ of mandamus.
Objections overruled; writ denied.
Brown and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Larry L. Cassano, Jr.,: Relator, : v. : No. 03AP-1227 Industrial Commission of Ohio : (REGULAR CALENDAR) North Coast Disposal Co., Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on May 6, 2004 M. Scott Kidd, for relator.
Jim Petro, Attorney General, and Stephen D. Plymale, for respondent Industrial Commission of Ohio.
 In Mandamus {¶ 13} Relator, Larry L. Cassano, Jr., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which terminated his temporary total disability ("TTD") compensation based upon a finding that he had been engaged in work activity inconsistent with the receipt of TTD compensation and further finding that relator had engaged in fraud for the period January 3, 2001 through January 27, 2002. Relator contends that the activities that he undertook were merely limited steps to preserve his business and did not disqualify him from the receipt of TTD compensation.
 {¶ 14} Findings of Fact:
 {¶ 15} 1. Relator sustained a work-related injury on May 13, 1985, and his claim has been allowed for: "strain low back and neck; herniated disc L5-S1."
 {¶ 16} 2. During the time that relator was employed as a driver, he also operated a car dealership as a separate business.
 {¶ 17} 3. Relator had been able to return to work; however, he re-aggravated his back condition on January 1, 2001 and the last day that he worked was January 2, 2001.
 {¶ 18} 4. Relator began receiving TTD compensation as a result of the re-aggravation of his back injury beginning January 3, 2001, based upon the C-84 of his treating physician John A. Kostoglou, D.C.
 {¶ 19} 5. The Ohio Bureau of Workers' Compensation ("BWC") received an anonymous tip that relator was working while receiving TTD compensation. As a result, the BWC began investigating relator some time in February 2001.
 {¶ 20} 6. On January 26, 2001, an investigator for the BWC telephoned relator concerning his business, Tower City Motorcars ("Tower City"), and was told by relator that he had not worked since the date of his re-aggravation and that his business was on hold. (R. 10.) Members of the Special Investigations Unit ("SIU") began investigating relator. Relator informed the agents about his car dealership and admitted that he goes there approximately two to three times per week to: get the mail; write up the deals on car sales; sign business paperwork; handle customers who approach; and supervise his friends who are helping him out with the business. Relator indicated that most of the time he sits behind the desk. (R. 268.) When asked whether he was currently attending auto auctions, relator indicated that a friend of his, Billy Becker, had been attending the auctions and had bought some cars on behalf of Tower City. Relator admitted that he has opened and closed the business, but indicated that his friends assisted with it and were doing the mechanical work which relator himself used to perform. Relator indicated that he was merely maintaining the financial end of the business, handling the books, paying the bills, and supervising.
 {¶ 21} 7. The SIU presented a timeline of relator's business transactions from January 6, 2001 through December 17, 2001. Notations were made with regard to the purchase of vehicles, payments for parts, four payments to Mike Beesley for repairing cars and performing title work, and receipts for both cars sold and for unknown reasons. Upon review, nothing indicates that Billy Becker was either paid to attend car auctions or that the actually attended any auctions.
 {¶ 22} 8. Surveillance logs were submitted as evidence indicating, in pertinent part, the following: on November 14, 2001, agents Hoover and Cronig went to Tower City where they were greeted by relator, who identified himself as the owner. While they were there, relator dealt with a customer who was inquiring about a vehicle on the lot. Relator explained to the agents that he could go to a dealer auction for them and buy a vehicle for them. (R. 125.) On November 19, 2001, agent Graven went to Tower City and observed two white males working on a car which was on a lift in one of the bays of the building. Agent Graven asked for the owner and relator came out from under the vehicle and identified himself as the owner. (R. 128.) On November 19, 2001, agents Hoover and Cronig returned to the business and relator explained to them that he had just returned from an auction and picked up a car for a customer. Relator again told them that he could buy them a car from an auction. The agents asked relator about a vehicle which was up on a lift in one of the bays of the garage and relator informed them that he had just picked up this vehicle and was completing some minor repairs. Relator showed the agents some of the things that were wrong with the car and indicated that he can fix minor repairs and that he knows whether a car is worth the asking price. (R. 135-146.) On December 3, 2001, agents Black and Tsimpers approached Tower City and spoke with relator, who was working in the garage bay and inquired about the price of a car on the lot. Relator offered to buy them a vehicle at an auction. (R. 141.)
 {¶ 23} 9. Relator submitted eight letters from people familiar with him extolling his virtues as an honest man, always willing to lend a hand to someone in need. None of the letters spoke to the issue of whether relator had been working during the time period in question.
 {¶ 24} 10. The BWC's motion requesting that the commission exercise its continuing jurisdiction, terminate relator's TTD compensation, declare an overpayment, and find that relator had been engaged in fraud was heard before a district hearing officer ("DHO") on February 18, 2002. The DHO found that relator had wrongfully been paid TTD compensation for the period January 3, 2001 through January 27, 2002 and declared that the compensation was overpaid for the following reasons:
* * * The Hearing Officer relies upon claimant's counsel's statement stipulating the claimant was overpaid temporary total compensation during this period. Also relied upon are the multiple documents submitted by Bureau of Workers' Compensation investigator Ms. Joyce Hoover. These documents, including Mr. Cassano's written statement, support the Bureau of Workers' Compensation's assertion the claimant was employed as owner/operator of Tower City Motors while collecting temporary total compensation.
* * *
* * * The file is replete with title transfers, check deposits for title work, and deposits for business supplies. The title records reveal the claimant purchased at least three different vehicles from a dealer during this time period. Also, the claimant testified he engaged in sales of cars with customers, opened and closed the business, and supervised other workers. In addition, claimant completed a tax return for the year 2000 wherein he identified himself as selfemployed and paid self-employment taxes.
The Hearing Officer notes the claimant indicated at this hearing he did not consider his activity at Tower City Motors as "work" during the time period at issue. Claimant's counsel contended claimant was merely preserving the interests of the business and did not intend to mislead the Bureau of Workers' Compensation. The Hearing Officer does not find the claimant's assertion persuasive as the level of activity during this time period (as outlined above) is inconsistent with the representations made to the Bureau of Workers' Compensation on 1/26/01 and on the C-84 forms. The claimant was engaged in activity that required completion of paperwork, sales, and supervision of other workers. Also, the Hearing Officer strongly relies upon the claimant's own representation on the 2000 tax forms as self-employed.
 {¶ 25} With regard to the finding of fraud, the hearing officers specifically found that relator's comment on January 26, 2001, that he had not been working at Tower City since his injury and that the business was essentially on hold was false and that relator knew that statement to be false. The hearing officer found that relator intended to mislead the BWC with regard to his activity as the owner/operator of Tower City.
 {¶ 26} 11. Relator's appeal was heard before a staff hearing officer ("SHO") on May 30, 2002 and resulted in an order affirming the prior DHO order. With regard to the finding that relator had been involved in work activities inconsistent with the receipt of TTD compensation, the SHO stated as follows:
* * * In affirming the District Hearing Officer's order, the Staff Hearing Officer relies on State ex rel. Blabac v.Indus. Comm. 87 Ohio St. 3d 113 wherein the court stated that, "temporary total disability compensation is for loss of earnings; accordingly, temporary total compensation is unavailable to one who has returned to work, i.e. is earning wages." (at 115). The court went on to explain that the return to substantial gainful employment as well as to sporadic employment bars the receipt of temporary total compensation.
In this case the claimant continued to work at his car sales business albeit sporadically during the period of disability at issue. Since he continued to work, Blabac clearly bars the receipt of temporary total benefits. Therefore, the claimant is overpaid for temporary total benefits received January 3, 2001 to January 27, 2002.
 {¶ 27} With regard to the finding of fraud, the SHO concluded as follows:
The Bureau of Workers' Compensation asserted that the claimant fraudulently received the temporary total benefits because he told the Bureau of Workers' Compensation's claims specialist that his business was on hold when he spoke to her on January 26, 2002. At the time of the conversation and before that time the claimant had engaged in sporadic work activities at his car sales business.
The Staff Hearing Officer finds that the claimant knew or should have known that his sporadic work activity was not permitted at a time when he received temporary total benefits. In addition the claimant knew he was making a false statement when he told the claims representative that his business was on hold because he continued working on a sporadic basis. Therefore, the Staff Hearing Officer agrees with the District Hearing Officer's finding that the claimant concealed his work activity at Tower City Motors when he had a duty to disclose it. The fact that the claimant was working was material to payment of temporary total benefits. The claimant's statement that his business was on hold was made with knowledge of its falsity and with the intent of leading the Bureau of Workers' Compensation to rely upon it. The Bureau of Workers' Compensation justifiably relied on the claimant's statement and paid the claimant temporary total benefits to which he was not entitled.
In addition to the evidence cited by the District Hearing Officer, the Staff Hearing Officer relies on the investigation report prepared by the Bureau of Workers' Compensation's fraud division along with its attachments. Accordingly, the Staff Hearing Officer affirms the District Hearing Officer's finding of fraud and orders that the overpayment be collected in accordance with the fraud provisions of Ohio Revised Code Section4123.511(J).
 {¶ 28} 12. Further appeal filed by relator was refused by order of the commission mailed November 6, 2002.
 {¶ 29} 13. Thereafter, relator filed the instant mandamus action in this court.
 {¶ 30} Conclusions of Law:
 {¶ 31} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 32} Relator raises two arguments in this mandamus action: (1) that the record does not support a finding that he had either been engaged in work activity during the time period involved or that he had been engaged in work activity which was medically inconsistent with his restrictions; and (2) that there is not some evidence in the record to support a finding of fraud.
 {¶ 33} Temporary total disability compensation is prohibited to a person who has returned to work. R.C. 4123.56(A); State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. In the present case, relator was present at the hearing before the DHO and he was represented by counsel. While a transcript of those proceedings has not been made part of the record, the DHO specifically noted in her order that she was relying "upon [relator's] counsel's statement stipulating that [relator] was overpaid temporary total compensation during this period." As such, while relator argues in this mandamus action that the evidence was not sufficient to support a finding that he had either worked or been engaged in activities which were medically inconsistent with his allowed injuries during this time period, the DHO made the specific finding that relator had stipulated, through counsel, that he had been overpaid compensation during this time period. In fact, at the DHO hearing, the only issue was whether or not relator was guilty of fraud. Pursuant to State exrel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, issues which were not previously raised are deemed waived and cannot be raised, for the first time, in a mandamus proceeding. As such, the issue is not rightfully raised at this time.
 {¶ 34} In his reply brief, relator, through counsel, admits that he acknowledged an overpayment; however, relator indicates that his declaration was made prior to the Ohio Supreme Court's decision in State ex rel. Ford Motor Co. v. Indus. Comm.,98 Ohio St.3d 20, 2002-Ohio-7038. In the interests of justice, this magistrate will proceed to address this issue.
 {¶ 35} In State ex rel. Campbell v. Indus. Comm., Franklin App. No. 02AP-1253, 2003-Ohio-4824, this court recently examined the application of Ford Motor Co., and this court's decision inState ex rel. Am. Std., Inc. v. Boehler, Franklin App. No. 01AP-1138, 2002-Ohio-3323, which was later affirmed by the Ohio Supreme Court in State ex rel. Am. Std., Inc. v. Boehler,99 Ohio St.3d 39, 2003-Ohio-2457. In adopting the decision of the magistrate, including both the findings of fact and conclusions of law contained therein, this court noted as follows:
* * * [T]he concept of "working" or "employment" is not limited to manual labor. A person who supervises others and arranges for supplies may nonetheless be engaged in work activity. This court has rejected the argument that a person is not engaged in work when the activities are managerial and do not involve strenuous physical labor. E.g., State ex rel. Nahod v. Indus. Comm.
(Sept. 2, 1999), Franklin App. No. 98AP-1157 (finding that claimant was not simply the business owner but managed and operated it); State ex rel. Kasler v. Indus. Comm. (Feb. 15, 1996), Franklin App. No. 95AP-341 (noting that work need not include physical labor in order to preclude eligibility for disability compensation).
However, a person receiving disability compensation may have personal investments and give reasonable attention to them. See, generally, State ex rel. Ford Motor Co. v. Indus. Comm.,98 Ohio St.3d 20, 2002-Ohio-7038 (clarifying that mere ownership of a business is not incompatible per se with receiving disability compensation). Nevertheless, some entrepreneurial activities and some investment activities may be sufficiently extensive to be deemed employment. Where a person is actively involved in operating a business, the commission may conclude that his or her activities are inconsistent with receipt of total disability compensation. Involvement such as making sales or assisting in day-to-day operations of a shop may be viewed as employment incompatible with disability, as opposed to mere ownership or managing one's personal finances. See, generally,Nahod; [State ex rel. Schultz v. Indus. Comm. (Nov. 28, 2000), Franklin App. No. 00AP-166] * * *; States ex rel. Rousherv. Indus. Comm. (Feb. 3, 2000), Franklin App. No. 99AP-286.
The courts have recognized, however, that there are circumstances where some degree of managerial activity is compatible with receiving total disability compensation. Where the allowed conditions prevent an injured worker from continuing his former participation in a business he operated prior to his injury, and where the injury has forced claimant to withdraw from his former business activities except those necessary to preserve the business until he is physically able to return to it, the commission has discretion to conclude that the activities were compatible with receipt of total disability compensation where the claimant's activities were minimal and only indirectly generated income. Ford, supra. See, also, State ex rel. Am.Std., Inc. v. Boehler, Franklin App. No. 01AP-1138,2002-Ohio-3323 (involving a worker who owned rental properties but could no longer perform the necessary repairs/remodeling after the injury, hiring workers to perform it and supervising them).
 {¶ 36} Campbell at ¶ 52-54. (Emphasis sic.)
 {¶ 37} While relator is correct in asserting that the record is devoid of evidence of direct compensation paid to relator, this magistrate finds that there is "some evidence" in the record to support the commission's determination that relator's activities were inconsistent with the receipt of TTD compensation and support a finding that, even though he was not necessarily making any money, he was engaged in work activities.
 {¶ 38} Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. Teece, supra. Furthermore, the determination of disputed factual situations is within the final jurisdiction of the commission, subject to correction by an action in mandamus only upon a showing of an abuse of discretion. State ex rel.Allied Wheel Products, Inc. v. Indus. Comm. (1956),166 Ohio St. 47.
 {¶ 39} Relator contends that he did nothing more than the claimant in Ford Motor Co., who was found to have put gasoline in lawn mowers once a week, signed checks and issued cash for the employees' wages, on one occasion pushed a self-propelled mower into the garage, and continued to store landscaping equipment at his residence. However, based upon the record, this magistrate disagrees. On at least two occasions, the SIU agents saw relator in the work bays of the garage working on cars. While they did not provide a detailed description of relator's activities, the record indicated that, prior to the re-aggravation of his injury, he worked as a mechanic at Tower City. As such, this is some evidence that relator was engaged in more work activity than he told the agents he was doing. Furthermore, relator had indicated that, while he had no employees, he would pay his friends to help him. Specifically, relator indicated that Billy Becker attended auto auctions for him. However, upon review of his business records, no checks were issued to Mr. Becker. While, at the same time, relator was involved in activities that simply maintained the operation of the business (writing checks, maintaining his dealer's license, paying for supplies) there was other evidence that he was performing mechanic work on cars and that he may have been attending auto auctions. Based upon the record, this magistrate cannot find that the commission abused its discretion and, instead, finds that there is some evidence in the record to support the commission's decision. The case came down to one of credibility and the commission simply did not find relator to be credible. As such, relator's first argument fails.
 {¶ 40} Relator also contends that the commission abused its discretion in finding fraud. This magistrate disagrees.
 {¶ 41} The elements of fraud include: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another to rely upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. See Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69, paragraph two of the syllabus.
 {¶ 42} Relator contends that, because he admitted that he had been engaged in work activities, the commission abused its discretion in finding fraud. Relator contends that he did not realize that his activities at Tower City constituted work. Relator contends further that his actions were not inconsistent with the restrictions imposed upon him by his treating physician, Dr. Kostoglou.
 {¶ 43} The magistrate finds that there was "some evidence" to support a finding of fraud. Specifically, on January 26, 2001, when relator was asked about his business, he specifically stated that he had not worked since his re-aggravation and that his business was essentially on hold. Furthermore, while relator indicated that he had been paying friends to do the work at Tower City which he formally performed, there were only four checks paid to Mike Beesley indicating that they were being paid to him for repair work done on automobiles and for title work. There was no other evidence that relator paid anyone to perform any other work at Tower City. Further, relator indicated that he paid Billy Becker to attend the auto auctions, yet came forward with no evidence that he had actually paid Mr. Becker to attend those auctions. While relator is correct in arguing that income received secondarily to the ownership of a business is not indicative that an injured employee is working; however, in the present case, there is evidence that relator, the sole owner and operator and, for most of its years of operation, the sole employee, was working during the time at issue. As such, this magistrate finds that there was some evidence to support the commission's finding of fraud and relator's second argument fails as well.
 {¶ 44} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in finding that he was overpaid TTD compensation during the time period January 3, 2001 through January 27, 2002, and declaring an overpayment. Furthermore, the magistrate finds that relator has not demonstrated that the commission abused its discretion in finding that he engaged in fraud. As such, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.