LOVELY, Appellant,

v.

PERCY et al., Appellee.

[Cite as *Lovely v. Percy,* 160 Ohio App.3d 269, 2005-Ohio-1591.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20584.

Decided April 1, 2005.

Dan Swigert, for appellant.

Susan Blasik–Miller and Heather M. Loridas, for appellee.

FAIN, Judge.

{¶ 1} Plaintiff-appellant, Crystal Lovely, appeals from a summary judgment rendered against her on her claims for breach of oral contract, fraud, and medical malpractice. Lovely contends that the trial court erred in rendering summary judgment against her because she demonstrated the existence of genuine issues of material fact with regard to each of her claims.

{¶ 2} We conclude that Lovely did present evidence creating a genuine issue of material fact with regard to whether an oral contract existed. Therefore, the trial court erred by rendering summary judgment on this issue. We further find that the trial court did not err in rendering summary judgment against Lovely on her claims for fraud and medical malpractice. Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

I

{¶ 3} The facts relevant to this appeal are gleaned from the pleadings and affidavits of the parties and from Lovely's deposition testimony, all of which were submitted in support of, or in opposition to, the defendants-appellees' motion for summary judgment.

{¶ 4} In 2003, Lovely visited the offices of Premiere Plastic Cosmetic and Laser Surgery Center, where she consulted with plastic surgeon Thomas Percy, M.D., regarding breast-augmentation surgery. According to Lovely, she informed Percy that she wished to have her breast size increased. Specifically, she told him that she wanted to be a size 34C. Lovely averred that Percy assured her that the surgery would accomplish this goal.

{¶ 5} Conversely, Percy averred that he gave no assurances or guarantees regarding Lovely's postoperative breast size, other than to inform her that her "breasts would most likely be between a B and C cup post-operatively." Percy averred that he never gives assurances or guarantees regarding breast size.

{¶ 6} During the consultation, Lovely decided to undergo the procedure. She was given a six-page informed-consent document. According to Lovely, no one

reviewed the document with her. However, she read through the document as she was speaking to her husband on her cellular telephone. Lovely initialed the first five pages of the document and signed the last page. It is undisputed that the document contains a disclaimer stating that Lovely acknowledged that "no guarantee has been given by anyone as to the results that may be obtained."

{¶ 7} The surgery was scheduled for March 26, 2003. On that day, Lovely went to Percy's office and was provided with another document, entitled "Consent to Operation," which again stated that no guarantees had been given regarding the outcome of the surgery. Although Lovely signed the document, she averred that she was under the influence of drugs prescribed by Percy and that the drugs made her so drowsy that her husband had to carry her into the office.

{¶ 8} Following the surgery, Lovely made followup visits to Percy's office. During one of those visits, Percy gave her a piece of paper on which was written the size and style of bra that he wanted Lovely to purchase. The paper had Percy's office address and telephone number typeset at the top. The paper had the following in handwriting: "34C Cup Long Line Style 1805."

{¶ 9} Lovely contends that following surgery and aftercare, her breast size is less than a 34B. She filed suit against Percy and Premiere, alleging claims for breach of oral contract, fraud, and medical malpractice.

{¶ 10} Percy filed a motion for summary judgment in which he argued that the claim for breach of contract must fail because, in reality, it is a claim for medical malpractice. Percy also presented his own affidavit, in which he averred that he complied with the relevant standard of care and that he made no guarantee regarding the outcome. Finally, Percy argued that the claim for fraud must fail because there is no evidence that he made any false representations to Lovely. Lovely filed a memorandum in opposition to the motion.

{¶ 11} The trial court sustained the motion and rendered summary judgment against Lovely. With regard to the claim of breach of contract, the trial court found that Lovely failed to present any evidence that Percy had made a guarantee, while Percy produced evidence, in the form of the informed-consent documents, demonstrating that no guarantee had been made. The trial court further found that the claim for breach of contract was part of the claim for medical malpractice. With regard to the fraud claim, the trial court found that Lovely failed to present evidence of the existence of an oral guarantee or that any oral guarantee had been made with "utter disregard and recklessness." Finally, the trial court found that Percy provided evidence to counter the claim of malpractice and that Lovely failed to provide any evidence in rebuttal.

{¶ 12} Lovely appeals.

## II

{¶ 13} Lovely's first and second assignments of error are as follows:

{¶ 14} "The trial court erred in granting defendant's motion for summary judgment by improperly finding that Dr. Percy's breach of oral warranties were legally insufficient to form the basis of a contract action under Ohio law.

{¶ 15} "The trial court erred in granting defendant's motion for summary judgment with respect to plaintiff's breach of contract claim by improperly weighing the evidence, as there were material issues of fact to be determined at trial as to whether the defendant promised the plaintiff that her breasts would be a size 'C' after the operation."

{¶ 16} Lovely contends that the trial court erred in rendering summary judgment against her on her claim for breach of oral contract. In support, she argues that this claim does not constitute a claim for medical malpractice but is instead based upon a separate claim that a guarantee was made regarding her postoperative breast size. In support, she cites *Heffner v. Reynolds,* 149 Ohio App.3d 339, 2002-Ohio-4655, 777 N.E.2d 312, for the proposition that this claim must survive because it is not dependent upon a finding of professional misconduct but relies instead upon a separate promise that she would achieve her goal. She also contends that the trial court improperly weighed the evidence in determining that she failed to prove the existence of an oral contract.

{¶ 17} We review the appropriateness of summary judgment de novo and follow the standards set forth in Civ.R. 56. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201.

{¶ 18} We turn first to the issue whether there is evidence in the record of the existence of an oral contract regarding the outcome of the surgery. First, there is Lovely's deposition and affidavit testimony, in which she claimed that Percy made an oral promise that she would be a size 34C following surgery. There is also evidence in the form of the paper provided to Lovely regarding the size of bra to purchase postoperatively. Finally, during Lovely's deposition, counsel for Percy indicated that Percy's own office notes indicated that Lovely should bring a size 34C bra to her next followup visit. Therefore, contrary to Percy's assertions and the trial court's findings, we conclude that there is

evidence in the record upon which a reasonable juror could find that Percy made an oral promise or contract.

{¶ 19} We next address the question whether Lovely's claim of oral contract actually constitutes a claim for medical malpractice. In *Heffner*, supra, a physician made oral and written guarantees to his patients indicating that he guaranteed their "surgery satisfaction" with regard to liposuction procedures. 149 Ohio App.3d 339, 2002-Ohio-4655, 777 N.E.2d 312, at ¶ 3. Following surgery, three patients filed claims for medical malpractice and breach of express warranty. Id. at ¶ 5. The trial court rendered summary judgment against the patients on the breach-of-contract claims. Id. at ¶ 7.

{¶ 20} On appeal, the Sixth District Court of Appeals reversed the trial court, holding that the claims for breach of contract were not "dependent on a finding that [the doctor] committed some sort of professional misconduct. Rather, the claims evolve from an agreement, separate and apart from [the doctor's] agreement to perform medical services for [the patients], that [the patients] would be satisfied with the results of the liposuction surgery." Id., ¶ 10. Since the doctor's "own promotional materials promised a 'new you' and guaranteed that patients would be happy with their results," the appellate court found that a claim for breach of contract could be maintained based upon the separate "satisfaction agreement." Id.

{¶ 21} We agree that a doctor and patient can enter into a "satisfaction contract" that is separate and distinct from the primary contract between a doctor and patient for medical care. We also agree that a showing of a breach of a satisfaction contract does not require, or involve, a demonstration of medical malpractice.

{¶ 22} Percy next contends that the consent forms signed by Lovely override any alleged oral agreement. However, we doubt whether either of those forms can be claimed to constitute the entire contract between Percy and Lovely; they both are limited to the possible side effects and risks of surgery and are intended as written notice that Lovely gave her informed consent to surgery. Indeed, the Tenth District Court of Appeals has indicated that informed-consent forms might not constitute contracts at all. See *Harden v. Univ. of Cincinnati Med. Ctr.*, Franklin App. No. 04AP–154, 2004-Ohio-5548, 2004 WL 2341713, ¶ 22. Neither form contains any provision to the effect that it, or both in combination, constitutes the entire contract between the parties or that the terms of the contract may not be altered except by a writing signed by both parties. The no-guarantee clauses of the informed-consent forms could be construed as merely applying to any alleged guarantees regarding risks and side effects and not applying to any alleged side contract for satisfaction.

{¶ 23} There is evidence that Lovely was under the influence of narcotics at the time she signed the second document. Therefore, a juror could find that the second document has no binding effect. In any event, we conclude that a reasonable juror could find that Percy made an oral guarantee to Lovely, precluding summary judgment on Lovely's breach-of-contract claim.

{¶ 24} Although not raised by either party, R.C. 1335.05, the Statute of Frauds, provides, "No action shall be brought to charge a person licensed by Chapter 4731. of the Revised Code to practice medicine or surgery, osteopathic medicine or surgery, or podiatric medicine and surgery in this state, upon any promise or agreement relating to a medical prognosis unless the promise or agreement is in writing and signed by the party to be charged therewith." While this statute would appear to be dispositive of this issue, it constitutes an affirmative defense, and Percy failed to assert it in his answer, thereby waiving it. We mention this issue only because it does make available to physicians a legal defense against claims of oral promises concerning outcomes should a physician desire to avail himself or herself of the defense.

{¶ 25} Lovely's first and second assignments of error are sustained.

### III

{¶ 26} Lovely's third assignment of error is as follows:

{¶ 27} "The trial court erred in granting defendant's motion for summary judgment with respect to plaintiff's claim for fraud, as there are material issues of fact to be determined at trial as to whether the defendant fraudulently promised plaintiff that her breasts would be a size C after the breast enhancement operation."

{¶ 28} Lovely contends that the trial court erred in rendering summary judgment against her on her claim for fraud. In support, she claims that the trial court improperly discredited her testimony regarding the evidence of an oral warranty. She also claims that she presented evidence to prove a claim of fraud.

{¶ 29} In order to prove fraud, Lovely must demonstrate the following:

{¶ 30} "(1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another to rely upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance." *State ex rel. Cassano v. Indus. Comm.*, Franklin App. No. 03AP–1227, 2005-Ohio-68, 2005 WL 44444, ¶ 41.

{¶ 31} There is evidence that Percy promised a certain outcome that did not occur. However, a promise of a certain outcome does not, in our view, constitute a representation of fact. For example, telling homeowners that their house has a cracked foundation in order to induce them to enter into a contract for repairs is not the same as making a promise that the repairs will result in a stronger foundation. Since a fraud claim cannot be predicated upon a promise relating to future action or conduct, we conclude that Lovely's fraud claim must fail. See *Watkins Restaurant v. Rabideau* (Aug. 21, 1981), Lucas App. No. L–80–183, 1981 WL 5760.

{¶ 32} Lovely's third assignment of error is overruled.

IV

{¶ 33} Lovely's fourth assignment of error is as follows:

{¶ 34} "The trial court erred in granting defendant's motion for summary judgment with respect to plaintiff's claim for malpractice because the defendant's affidavit did not explain the relevant standard of care and was therefore legally insufficient to satisfy the requirements of *Hoffman v. Davidson* (1987), 31 Ohio St.3d 60 [31 OBR 165, 508 N.E.2d 958]."

{¶ 35} Lovely contends that the trial court should not have rendered summary judgment against her on her claim for medical malpractice. In support, she argues that the trial court's reliance upon Percy's affidavit regarding the standard of care was erroneous. Specifically, she claims that Percy's affidavit is insufficient to prove that he met the standard of care. We disagree.

{¶ 36} In *Hoffman v. Davidson* (1987), 31 Ohio St.3d 60, 31 OBR 165, 508 N.E.2d 958, the Ohio Supreme Court held that a doctor's own affidavit can be considered in determining whether the standard of care was met.

{¶ 37} Percy's affidavit in support of his motion for summary judgment set forth his qualifications and described his evaluation of Lovely. The affidavit also discussed, although cursorily, the procedure. Finally, the affidavit contained averments that Percy's evaluation, care, and treatment of Lovely met "all acceptable standards of care for plastic surgeons in like or similar circumstances." Lovely did not provide any evidence to rebut this.

{¶ 38} We conclude that Percy's affidavit does comport with the requirements of *Hoffman* and is sufficient to establish that Percy met the applicable standard of care. Because Lovely failed to present any opposing medical testimony, we conclude that the trial court did not err in rendering summary judgment against her on her medical-malpractice claim. Accordingly, Lovely's fourth assignment of error is overruled.

V

{¶ 39} Lovely's first and second assignments of error having been sustained, and her third and fourth assignments of error having been overruled, that part of the summary judgment rendered against Lovely on her claim for breach of contract is reversed, the judgment of the trial court is affirmed in all other respects, and this cause is remanded for further proceedings.

Judgment affirmed in part
and reversed in part,
and cause remanded.

BROGAN, P.J., and WOLFF, J., concur.