DECISION
{¶ 1} Relator, Ernie L. Couch, commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order in which the commission declared an overpayment of temporary total disability ("TTD") compensation for the periods August 4, 1995 through October 14, 1997, and from September 5, 1999 through June 30, 2001, and further ordering the commission to enter a new order finding that relator was not overpaid TTD compensation during those periods.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission abused its discretion in finding an overpayment and recommended that this court grant the requested writ of mandamus. The commission filed an objection to the magistrate's decision. Relator did not file a response to the objection.
 {¶ 3} Specifically, the commission argued that the magistrate erred in concluding that relator's activities in connection with his business, AEC Construction, were not incompatible with receipt of TTD. According to the commission, the magistrate erred in concluding that "relator's activities in running AEC Construction are * * * necessary to maintain the business" and "should not be counted against him" given the fact that he owned and operated his business prior to his industrial injury. Rather, the commission contends, the magistrate should have applied the case of State ex rel. Rollins v. Indus. Comm.,105 Ohio St.3d 319, 2005-Ohio-1827.
 {¶ 4} In Rollins, the Supreme Court of Ohio held that TTD "presumes a total loss of earnings" whereas wage-loss compensation "not only permits a return to other employment but encourages it, by paying 66 2/3 percent of the difference between the claimant's wages before and after the injury." Id. at ¶ 6. (Emphasis sic.) Thus, we agree with the commission's contention that the appropriate remedy for relator's reduction in earnings is wage loss, not TTD. Although the magistrate conducted an accurate and thorough review of the applicable case law respecting the issue whether a claimant's activities are to be construed as "work," the magistrate's focus ultimately turned from whether relator's activities in connection with AEC Construction constitute work. Instead, the magistrate acknowledged that relator's situation is one of reduction of earnings — not a total loss of earnings — but simply deemed it unfair to declare an overpayment of TTD in a situation where, as here, the claimant's work activities are not medically inconsistent with his physical restrictions, he performs the same duties he performed prior to his industrial injury, and his activities contribute to the success of a going concern in which the claimant has a significant financial stake. That conclusion runs contrary to the holding in State ex rel. Ford Motor Co. v.Indus. Comm., 98 Ohio St.3d 20, 2002-Ohio-7038, 780 N.E.2d 1016, and this court's applications of Ford.
 {¶ 5} In Ford, the Supreme Court of Ohio held that mere ownership of a business, without more, is not incompatible with receiving disability compensation. Of particular importance inFord was the fact that the claimant's activities in that case did not directly generate income; they only secondarily produced income for the business. In State ex rel. Campbell v. Indus.Comm., 10th Dist. No. 02AP-1253, 2003-Ohio-4824, this court discussed the application of Ford. We observed, at ¶ 55, that:
* * * some entrepreneurial activities and some investment activities may be sufficiently extensive to be deemed employment. Where a person is actively involved in operating a business, the commission may conclude that his or her activities are inconsistent with receipt of total disability compensation. Involvement such as making sales or assisting in day-to-day operations of a shop may be viewed as employment incompatible with disability, as opposed to mere ownership or managing one's personal finances.
 {¶ 6} This is true regardless whether the claimant's activities for his side business performed while receiving TTD are the same (as here) or different (as in Ford) from those in which the claimant was engaged prior to his industrial accident. We so held in the case of State ex rel. Cassano v. Indus.Comm., 10th Dist. No. 03AP-1227, 2005-Ohio-68. In that case, the claimant operated his own car repair business while he was employed as a driver, and continued to operate his business while he received TTD following an industrial injury. The claimant argued that he was merely maintaining his business, like the claimant in Ford, but we found otherwise. Because the evidence revealed that the claimant conducted the opening and closing activities of the business, talked with customers and assisted with mechanical work on vehicles, we concluded that the claimant was engaged actively in business activities that directly generated income.
 {¶ 7} In the present case, there was also evidence in the record to support the commission's conclusion that relator was engaged in activities that directly generated income; that is, "work." He hired and paid his workers, acquired contracts and dealt with customers (including the employer for whom he was working when he sustained his industrial injury), managed and dispatched a fleet of trucks and drivers, and conducted other day-to-day operations of the business out of his home. Accordingly, the commission did not abuse its discretion in determining that relator engaged in work inconsistent with his receipt of TTD for the relevant periods of time, and in declaring an overpayment.
 {¶ 8} For all of these reasons, the commission's objection is sustained. We adopt the magistrate's decision as our own, including the findings of fact and conclusions of law, except to the extent that the conclusions of law are inconsistent with our discussion in paragraphs four through seven, and we deny the requested writ of mandamus.
Objection sustained; writ of mandamus denied.
Petree and French, JJ., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Ernie L. Couch, : :
Relator, : :
v. : No. 05AP-652 :
Industrial Commission of Ohio and : (REGULAR CALENDAR) Byrnes Conway Company, : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on December 16, 2005 Gibson Robbins-Penniman, and J. Miles Gibson, for relator.
Jim Petro, Attorney General, and Derrick L. Knapp, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 9} Relator, Ernie L. Couch, has filed this mandamus action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which declared an overpayment of temporary total disability ("TTD") compensation paid from August 4, 1995 to October 14, 1997 and from September 5, 1999 to June 30, 2001, on the basis that while he was paid TTD compensation, relator also received compensation from a business he owned. Relator requests the commission be ordered to find that he was not overpaid TTD compensation during those relevant time periods.
Findings of Fact:
 {¶ 10} 1. Relator sustained a work-related injury on May 30, 1995, arising out of his employment with respondent Byrnes Conway Company ("Byrnes Conway") and his claim has been allowed for "sprain lumbar; herniated disc L1-L2; depression nos with anxiety."
 {¶ 11} 2. At the time of his injuries, relator was a union laborer. While his exact duties while employed by Byrnes Conway are not listed in the record, the restrictions placed upon relator by his treating physicians included that he avoid lifting more than ten pounds, that he avoid bending at the waist, and no standing or standing in one position for greater than 30 minutes.
 {¶ 12} 3. Relator applied for, was granted and received TTD compensation totaling $14,430 for the periods August 4, 1995 to October 14, 1997 and September 5, 1999 to June 30, 2001.
 {¶ 13} 4. The Ohio Bureau of Workers' Compensation ("BWC") received an allegation that relator had been operating a business called AEC Construction with his brother during the time period he received TTD compensation.
 {¶ 14} 5. The BWC's Special Investigations Department opened an investigation and learned that relator had been running his own trucking/hauling company from his house. Pursuant to the affidavit of Michael Kroeger, the investigators learned that relator had been running AEC Construction since at least April 1994. Kroeger had been hired as a truck driver. He averred that relator hired him and paid him, that he received his directions from relator, and that relator "was always the boss." Kroeger also averred that he had never seen relator drive a truck. The record also contains statements from other men who had driven trucks for AEC Construction. They all averred that relator did the hiring, told them where to drive their trucks, paid them, and ran the business out of his home.
 {¶ 15} 6. The record also contains the January 13, 1997 letter from Bob Robinson, Safety Director at Byrnes Conway. Mr. Robinson stated, in relevant part, as follows in his letter:
* * * Ernie Couch no longer works, nor does he have the desire to work, as a construction laborer. Mr. Couch has started his own construction and trucking company called AEC Construction. Mr. Couch's company, AEC Construction, was contracted to haul for Byrnes-Conway until the summer of 1996[.] * * *
* * *
* * * Mr. Couch works every day managing his own construction company. In 1995 Byrnes-Conway Company paid AEC Construction, Mr. Couch's company, $208,122. In 1996, even though AEC only worked for Byrnes-Conway for less than two-thirds of the year, Byrnes-Conway paid AEC $148,696. I do not know what other income Mr. Couch may have, but we are not talking about a poor injured construction worker who cannot work because of an injury sustained on one of Byrnes-Conway's jobs. Mr. Couch is fully self-employed.
 {¶ 16} 7. At the close of the investigation, the BWC filed a motion with the commission requesting the declaration of an overpayment of TTD compensation for the periods previously identified.
 {¶ 17} 8. The matter was heard before a district hearing officer ("DHO") on June 5, 2003, and resulted in an order granting the motion of the BWC. The DHO found that relator ran a trucking business for remuneration during the periods August 4, 1995 to October 14, 1997 and from September 5, 1999 to June 30, 2001. The DHO based this determination on the affidavits from the employees and the January 13, 1997 letter from Bob Robinson. The DHO concluded as follows:
* * * [T]he injured worker's trucking company management activities were employment for remuneration. The District Hearing Officer finds that the preponderance of the evidence persuades the District Hearing Officer that the injured worker's activity managing a fleet of trucks and drivers, dispatching them to job contracts acquired by the injured worker, and calculating their payroll was sustained gainful employment.
Thereafter, the DHO also made a finding of fraud.
 {¶ 18} 9. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on January 7, 2004. The SHO affirmed the prior DHO order, determined that relator's trucking company management activities constituted employment for remuneration and that his activities managing a fleet of trucks and drivers, dispatching them to job contracts acquired by relator, and calculating their payroll constitutes sustained gainful employment. The SHO also determined that relator had committed fraud.
 {¶ 19} 10. Relator's further appeal was refused by order of the commission mailed February 21, 2004.
 {¶ 20} 11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 21} For the reasons that follow, it is this magistrate's decision that relator has demonstrated that the commission abused its discretion and relator is entitled to a writ of mandamus.
 {¶ 22} TTD compensation is intended to compensate a claimant for the loss of earnings sustained while the injury heals. Stateex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42. For this reason, TTD compensation ceases when a claimant "has returned to work." State ex rel. Ramirez v. Indus. Comm.
(1982), 69 Ohio St.2d 630, 632.
 {¶ 23} In Ramirez, the court did not define "work." However, later cases suggest that remuneration is a key element. In State ex rel. Nye v. Indus. Comm. (1986), 22 Ohio St.3d 75, the court implied that "work" entailed remuneration. In State exrel. Johnson v. Rawac Plating Co. (1991), 61 Ohio St.3d 599,600-601, the court affirmed that definition as follows:
* * * In State, ex rel. Nye, v. Indus. Comm. (1986),22 Ohio St.3d 75, * * * we held that "work" as used in Ramirez,
referred to any "substantially gainful employment," not merely the former position of employment. To hold otherwise:
"* * * would permit the payment of temporary total disability benefits to a claimant who has chosen to return to full-time work at a job other than his former employment. In such a case, the claimant is no longer suffering the loss of earnings for which temporary total disability benefits are intended to compensate.["] * * *
 {¶ 24} Later, in State ex rel. Blabac v. Indus. Comm.
(1999), 87 Ohio St.3d 113, the court determined that the receipt of wages does not need to be for full-time work in order for TTD compensation to be barred. The court reiterated that Ramirez
provides that a return to work bars the payment of TTD compensation.
 {¶ 25} Thereafter, the court was asked to review cases wherein the injured worker was also self-employed. In State exrel. Ford Motor Co. v. Indus. Comm., 98 Ohio St.3d 20,2002-Ohio-7038, the claimant, Christopher Posey, held two jobs concurrently: one with Ford Motor Company ("Ford") and the other was his own lawn care business. From 1994 through 1996, Posey was the sole employee of his lawn care business. In 1997, he hired another employee.
 {¶ 26} In 1998, Posey injured his neck while working at Ford. Posey's injury forced him to stop his physical participation in his lawn care business. As a result, he hired three additional employees. The injury also temporarily forced Posey from his job at Ford and he received TTD compensation from June 1998 through September 8, 1998.
 {¶ 27} Ford later sought to recoup TTD compensation alleging that Posey's participation in his lawn care business constituted work and, therefore, prohibited the receipt of TTD compensation. Evidence presented regarding Posey's participation in his business, however, established only that Posey signed for workers' paychecks and fueled and drove riding lawn mowers onto a truck. Surveillance of Posey by Ford supported Posey's contention that he did no landscaping work in connection with his business while receiving TTD compensation.
 {¶ 28} The commission refused Ford's request to declare an overpayment. Ford filed a mandamus action and the commission's decision was upheld. The Ford court, at ¶ 20-24, explained:
Ford asserts that Blabac is controlling and bars TTC here. InBlabac, the claimant, John Blabac, was getting TTC when it was discovered that he was earning wages as a scuba diving instructor. While his partner did the physical instruction, Blabac sat at poolside with a clipboard, grading the students. Id. at 113[.] * * * Whether he lectured, prepared or graded written exams, or otherwise instructed students was not known.
The commission terminated TTC and declared an overpayment. Blabac argued that only "substantially gainful" work could bar TTC, and that his work was neither substantial nor gainful. We disagreed with Blabac, holding that low paying and sporadic employment was still work. Because Blabac was paid for his efforts, we determined that they constituted work, and barred TTC. We suggested that wage-loss compensation would have been more appropriate for Blabac's circumstances.
Ford argues that under Blabac, any work precludes TTC and asserts that Blabac forbids TTC here. Ford, however, overlooks the distinction between this case and Blabac. Blabac never disputed that his actions constituted work. He argued instead that he had not worked enough to prevent TTC. Claimant herein, on the other hand, argues that his activities were not work, rendering Blabac off point.
Claimant's assertion has merit. Unlike the claimants inBlabac, Nye, State ex rel. Johnson v. Rawac Plating Co. (1991),61 Ohio St.3d 599, * * * and State ex rel. Durant v. Superior'sBrand Meats, Inc. (1994), 69 Ohio St.3d 284, * * * this claimant's activities did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept his employees
doing the tasks that generated income.
Obviously, application of this rationale must be applied on a case-by-case basis and only when a claimant's activities are minimal. A claimant should not be able to erect a facade of third-party labor to hide the fact that he or she is working. In this case, however, claimant's activities were truly minimal and only indirectly related to generating income. * * *
(Emphasis sic.)
 {¶ 29} As noted above, the court focused on the following relevant factors: the claimant removed himself from the physical labor of the business and hired other people to perform that labor; the claimant was not actively engaged in the business; and the claimant's activities in and of themselves did not generate income — his activities produced money only secondarily.
 {¶ 30} In State ex rel. American Standard, Inc. v. Boehler,99 Ohio St.3d 39, 2003-Ohio-2457, the claimant, Robert Boehler, also held two jobs concurrently: one with American Standard and the other was his own rental property business. Boehler testified that every week there were activities in connection with the properties, but that since the worsening of his condition, he had been unable to do any of the repair and maintenance work he had formerly done and had hired contractors to do that work. An investigator testified that he saw Boehler at the properties engaging in the following activities: directing workers, picking up tools and carrying them, passing tools, measuring, pouring paint into a paint sprayer, helping to clean up after painting, helping cut boards and put paneling in place, delivering materials to a work site in a truck, and assisting workers to unload equipment.
 {¶ 31} The commission concluded that Boehler's activities did not constitute employment but were merely supervision of investment property. The commission determined that the activities of Boehler were reasonable actions of a person who has a substantial capital investment in the form of a passive investment in rental properties and that such activity did not rise to the level of self-employment as alleged.
 {¶ 32} This court agreed with the commission's determination and the Supreme Court of Ohio agreed. The Boehler court stated, at ¶ 22-26, as follows:
 {¶ 33} TC compensates for the loss of earnings a claimant sustains while his or her injury heals. State ex rel. Ashcraftv. Indus. Comm. (1987), 34 Ohio St.3d 42, 44 * * *. This means that TTC is precluded when the claimant begins to earn again, i.e., when he or she is paid money in direct exchange for labor.State ex rel. Ford Motor Co. v. Indus. Comm., 98 Ohio St.3d 20,2002-Ohio-7038 * * *, supports this, by refusing to disqualify claimants whose activities "produced money only secondarily" or were "only indirectly related to generating income." Id. at ¶ 23 and 24.
The disputed amount in this case was not given in exchange for claimant's labor — it was paid pursuant to a contractual rental agreement. Certainly it can be argued that if claimant's apartments were not kept up, rental income could evaporate. There are, however, two key flaws in this logic. First, it runs counter to Ford. There, claimant's industrial injury not only removed him from his former job but also kept him from his side business of mowing lawns. Claimant was forced to hire others to do this work and paid them accordingly. Ford argued that claimant's act of signing payroll checks to these workers constituted "work" so as to foreclose TTC. We disagreed, writing that "this claimant's activities did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept his employees doing the tasks that generated income." (Emphasis sic.) Id. at ¶ 23.
In the case before us, rental upkeep generated income secondarily. It was the contractual relationship between claimant and his tenants that directly compelled the payment of money. It was not directly generated by the claimant's labor.
Second, American Standard confuses the concept of remuneration with claimant's physical presence at the rental site. If claimant had never visited his properties and had never participated in their rental or upkeep, leaving those tasks to others, claimant would still have received his rental income. Few would argue that in such a case, TTC would be precluded. This indeed suggests that the pivotal point of American Standard's position is claimant's physical presence at the rental units. Nothing, however, prevents claimant from going there. The only thing that is barred is claimant's participation in any activities that are medically inconsistent with his allegation of an inability to return to his former position of employment or that directly generate income, and there is evidence of neither here.
Ford acknowledged the perils of situations such as that at issue, cautioning that "this rationale must be applied on a case-by-case basis and only when a claimant's activities are minimal. A claimant should not be able to erect a façade of third-party labor to hide the fact that he or she is working." Id., 98 Ohio St.3d 20, 2002-Ohio-7038, * * * at ¶ 24.
(Emphasis sic.)
 {¶ 34} The court focused on the following relevant factors: the rental money would have been received by the claimant regardless of whether the claimant went to the sites or not; the claimant had to hire contractors to perform the physical labor he formerly performed relative to his rental properties; the claimant's actions were not physically inconsistent with his medical restrictions; and the rental income was a passive investment.
 {¶ 35} Recently, in State ex rel. Meade v. Indus. Comm.,
Franklin App. No. 04AP-1184, 2005-Ohio-6206, this court adopted the decision of this magistrate and found that the claimant in that case had engaged in activities which constituted work and precluded his receipt of TTD compensation. In Meade, the claimant, Steven L. Meade, sustained a work-related injury while employed by Allied Systems, Inc. ("Allied Systems"), and was paid TTD compensation from February 3, 2003 through February 3, 2004. Allied Systems filed a motion requesting that all the TTD compensation paid should be recouped based on evidence submitted that claimant was working in a self-employed capacity at a pizza shop called Ron's Pizza Enterprises, Inc. ("Ron's Pizza").
 {¶ 36} The record showed that Ron's Pizza had been run by claimant's wife since November 17, 2000. During the time he was being paid TTD compensation, claimant was observed at Ron's Pizza taking orders, preparing food, serving customers, working the cash register and delivering pizzas.
 {¶ 37} This magistrate found, and this court agreed, that the claimant was indeed engaged in work activity and that, even though the claimant was not being compensated in the form of wages, the activities which the claimant undertook were income generating activities which precluded the payment of TTD compensation. Although claimant argued that the pizza shop business would have been maintained whether he had been physically present at the shop or not and that he did not replace any employees of the pizza shop, this magistrate found and the court agreed that the claimant's activities of preparing food, serving customers, working the cash register and delivering pizzas are the very activities which generate income for the pizza shop. Unlike the situations presented in Ford andAmerican Standard, the court found that claimant's "hands-on engagement in the activities that produce income for a pizza business are distinguishable from the more passive, supervisory activities at issue in Boehler and Ford Motor Co., activities that produced income only secondarily." Id. at ¶ 8.
 {¶ 38} In the present case, a different factual situation is presented which this magistrate finds particularly relevant. The facts of the present case demonstrate that relator held two jobs concurrently: he was employed as a physical laborer for Byrnes Conway while, at the same time, he was the owner of AEC Construction. Relator's injury at Byrnes Conway precluded him from being able to perform the physically demanding work which he performed at Byrnes Conway. However, relator was still capable of performing, in every respect, the completely sedentary work which he had performed for his own company, AEC Construction. The record indicates that relator had a substantial financial investment in his company, that since its inception, relator was the one who hired employees, paid employees, told employees where to drive the trucks, and contracted with other companies to perform trucking/hauling work. It is undisputed that, in running AEC Construction, relator's physical activities were not inconsistent with his medical restrictions. Further, the evidence shows that relator's duties for AEC Construction were always sedentary and never would have conflicted with the restrictions which he had following his work-related injury with Byrnes Conway.
 {¶ 39} The question becomes what happens to a worker who has always held two jobs, one physically demanding and the other sedentary, if the injured worker becomes temporarily and totally disabled from performing the work duties involved in the physically demanding job? Are injured workers in the position of relator herein forced to sell off the assets of their other business or are they required to hire someone and then pay that someone to perform the sedentary job duties which they have always performed and are still medically capable of performing?
 {¶ 40} In the present case, this magistrate finds that relator has indeed suffered a loss of earnings by virtue of the fact that he is precluded from returning to his job with Byrnes Conway. Despite the fact that relator continued to operate AEC Construction as he always had, relator's loss of wages as a result of his injuries is still very real and should not be overlooked simply because this particular relator always had a second source of "income." Relator's activities are necessary to maintain the business and protect relator's financial investment. Because relator's activities in running AEC Construction are not physically inconsistent with his medical restrictions, and are necessary to maintain the business and safeguard relator's financial investment in his business, this magistrate finds that his activities with AEC Construction should not be counted against him and should not preclude his receipt of TTD compensation because relator is still suffering a loss of wages as a direct and proximate result of the work-related injuries he sustained with Byrnes Conway, and which injuries have physically precluded him from returning to his position at Byrnes Conway.
 {¶ 41} Based on the foregoing, it is the magistrate's conclusion that relator has demonstrated that the commission abused its discretion and this court should issue a writ of mandamus ordering the commission to vacate its order declaring an overpayment of TTD compensation to relator as relator is entitled to receive that compensation.